**John TOOLE, et al., Plaintiffs,**

v.

**GOULD, INC., et al., Defendants.**

**No. 1:CV–89–0576.**

United States District Court,
M.D. Pennsylvania.

May 22, 1991.

As Amended June 10, 1991.

Gerald J. Williams, Williams & Cuker, Philadelphia, Pa., for plaintiffs.

G. Wayne Renneisen, Mark A. Lockett, John D. Lemonick, Harvey, Pennington,

Herting & Renneisen, Philadelphia, Pa., for defendants.

MEMORANDUM AND ORDER

CONABOY, Chief Judge.

I. Introduction
   A. Factual Background
   B. Procedural Background
II. Discussion
   A. The Pennsylvania Hazardous Sites Cleanup Act
      1. Lutz v. Chromatex, Inc.—No Private Cause of Action
      2. General Electric v. Envirotech, Corp.—A Private Cause of Action
   B. Analogous Federal Standard for Private Cause of Action
      1. Special Class
      2. Legislative Intent
      3. Purpose and Scheme
III. Conclusion

I

*Introduction*

This is the second in a series of memoranda on litigation stemming from the Marjol/Gould Battery plant located in Throop, Pennsylvania. This particular memorandum concerns the motion for partial summary judgment filed by Defendant Gould, Inc. on the application of the Pennsylvania Hazardous Sites Cleanup Act, 35 Pa.S.A. §§ 6020.101–6020.1305 ("HSCA"), to the claims in *Toole v. Gould, Inc.*, Civ. No. 89–0576 (M.D.Pa. filed April 21, 1989).[1] For the reasons stated below, this court finds that a private cause of action exists under HSCA. Thus, to the extent Defendant Gould seeks to have judgment entered in it favor on the claims presented under HSCA, its motion will be denied.

A. Factual Background

From 1962 through 1982, a battery crushing and lead processing facility was operated by the Marjol Battery and Equipment Company ("Marjol") in Throop, Pennsylvania. In May, 1980, Gould, Inc. ("Gould") purchased the facility from Mr. Lawrence Fiegleman, the former owner of Marjol. For a period of two years, beginning in May 1980 and ending in April 1982, Gould ran the processing plant.

Operations ceased at the facility in 1982, however, when the federal and state governments determined that lead exposure in the area caused an imminent and substantial endangerment to the public and to the environment. The United States Environmental Protection Agency ("EPA") and Gould subsequently entered into a consent agreement in April of 1982 providing for the clean-up of the area and certain contaminated properties located near the plant. Under the terms of the agreement, Gould has conducted an extensive response action at the site and the surrounding properties.

B. Procedural Background

In the aftermath of the response activities by the government and Gould, several individuals brought suit to recover costs and damages to themselves and their properties. In this case, the Plaintiffs brought a six (6) count complaint based on the following causes of action:

A. Count I—Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA).

B. Count II—Violations of the Pennsylvania Hazardous Sites Cleanup Act, P.L. No. 108.

C. Count III—Strict Liability for abnormally dangerous and/or ultrahazardous activities.

D. Count IV—Common Law Negligence and Negligence per se as violations of

---

1. The first substantive memorandum involving the Marjol/Gould site was issued on November 13, 1990, and concentrated on claims brought under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"). *See Ambrogi, et al. v. Gould, Inc.,* 750 F.Supp. 1233 (M.D.Pa.1990).

the Pennsylvania Clean Streams Act and Pennsylvania Solid Waste Management Act.

E. Count V—Common Law Nuisance and Nuisance per se as violations of the Pennsylvania Clean Streams Act and Pennsylvania Solid Waste Management Act.

F. Count VI—Trespass as a direct physical interference with the person or property of another.

Complaint, Doc. No. 1.

After a series of dispositive motions were filed seeking the dismissal of or judgment entered concerning various counts of the complaint, this court issued a memorandum and order on November 13, 1990, addressing the Plaintiffs' CERCLA claims. *Ambrogi, supra* at note 1. The present memorandum addresses Count II of the *Toole* complaint concerning the application of the Pennsylvania Hazardous Sites Cleanup Act.

## II

## DISCUSSION

A. The Pennsylvania Hazardous Sites Cleanup Act

Defendant Gould has moved for judgment on all claims presented under the Hazardous Sites Cleanup Act. The Defendant maintains that any action under HSCA by the Plaintiffs is inappropriate since a private cause of action was not provided for by the Pennsylvania General Assembly.

The proposition that a private cause of action does not exist under the Act, either explicitly or by implication, has been upheld by both federal and state court decisions. *See Lutz v. Chromatex, et al.,* 730 F.Supp.

1328 (M.D.Pa.1990)[2]; *Fallowfield Development Corp., et al. v. Strunk,* Civ. No. 89–8644, slip op., 1990 WL 52745 (E.D.Pa. April 23, 1990), *Pennsylvania Journal of Environmental Litigation,* McGuire Publications, Volume ____, Number ____ (April 1990)[3]; *Vogel Disposal Services, Inc. v. Napco, Inc.,* A.D. No. 89–796, slip op. (C.P. Butler County, July 16, 1990). It is not, however, an undisputed conclusion universally embraced by all authorities. *See General Electric Environmental Services, Inc. v. Envirotech Corporation,* 763 F.Supp. 113 (M.D.Pa.1991) (Rambo, J.), 1991 WL 69417; Mattioni, *Pennsylvania Environmental Law Handbook* (2nd Edition 1990) at 203–205; Prendergast, *Environmental Private Rights of Action in Pennsylvania,* 42–51 (Pa.Bar Instit.1991); *See also, amicus curiae* brief of Pennsylvania Department of Environmental Resources in *Fry, et al. v. Leech Tool & Dieworks, Inc.,* A.D. No. 90–403 (C.P. Crawford County).

After reviewing the above cited matters, it would appear that there are two substantive sources representing the divergent opinions on this subject. They can be found in the Middle District of Pennsylvania cases of *Lutz II & III* and *Envirotech, supra.* Each are comprehensive and well structured decisions delineating the arguments for and against finding a private cause of action. There is little we can add to each and find it best to fully review them separately.

1. *Lutz v. Chromatex, Inc.*
   *No Private Cause of Action*

In *Lutz v. Chromatex, Inc.,* 725 F.Supp. 258 (M.D.Pa.1989) (*Lutz II*), the court considered for the first time the issue of whether a private cause of action accrues

---

**2.** There have been three published opinions concerning the Chromatex site in West Hazelton, Pennsylvania. For purposes of this memorandum, they are identified as *Lutz v. Chromatex, Inc.,* 718 F.Supp. 413 (M.D.Pa.1989) (*Lutz I*); *Lutz v. Chromatex, Inc.,* 725 F.Supp. 258 (M.D.Pa.1989) (*Lutz II*); and *Lutz v. Chromatex, Inc.,* 730 F.Supp. 1328 (M.D.Pa.1989) (*Lutz III*).

**3.** There have been four opinions issued by the Honorable Herbert J. Hutton concerning the

Fallowfield site in Chester County, Pennsylvania. For purposes of this memorandum, only two of these opinions are cited and will be referred to as *Fallowfield v. Strunk,* Civ. No. 89–8644, slip op. (E.D.Pa. April 23, 1990) (1990 WL 52745) (*Fallowfield I*) and *Fallowfield v. Strunk,* Civ. No. 89–8644 and 90–4431, slip op. (E.D.Pa. Feb. 11, 1991) (1991 WL 17793) (*Fallowfield II*).

under HSCA. Concentrating mainly on the language of the statute, three particular sections of HSCA were examined: section 702 on the scope of liability [4]; section 507 on the recovery of response costs [5]; and section 1101 concerning public nuisances.[6]

It had been suggested by the Plaintiffs that the liability provision of section 702 standing alone creates a private right of action. In the alternative, it was further argued that section 702 in conjunction with either section 507 or section 1101 provide for such a right.

In its analysis, the *Lutz II* court expressly rejected the argument that section 702(a)(3) by itself provides a private remedy for the recovery of response costs. *Lutz*, 725 F.Supp. at 264–265. Plaintiffs argued that section 702(a)(3) of HSCA contained language identical to that in section 107(a)(4)(B) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a)(4)(B), which has been uniformly held to create a private cause of action to recover response costs.[7] In rejecting the argument, the *Lutz* court cites two primary reasons. First, section 702(a) of HSCA and section 107(a) of CERCLA are not identical since the federal provision begins with a broad, all encompassing preface not includ-

**4. § 6020.702. Scope of Liability**

(a) *General rule.*—A *person who is respon*sible for a release or threatened release of a hazardous substance from a site as specified in section 701 is strictly liable for the following response costs and damages which result from the release or threatened release or to which the release or threatened release significantly contributes:

(1) Costs of interim response which are reasonable in light of the information available to the department at the time the interim response action was taken.

(2) Reasonable and necessary or appropriate costs of remedial response incurred by the United States, the Commonwealth or a political subdivision.

(3) Other reasonable and necessary or appropriate costs of response incurred by any other person.

(4) *Damages for injury to, destruction of or* loss of natural resources within this Commonwealth or a political subdivision. This paragraph includes the reasonable costs of assessing injury, destruction or loss resulting from such a release.

(5) The cost of a health assessment or health effects study.

35 Pa.S.A. § 6020.702(a).

**5. § 6020.507. Recovery of response costs**

(a) *General rule.*—A responsible person under Section 701 or a person who causes a release or a threat of a release of a hazardous substance or causes a public nuisance under *this Act or causes a release or substantial* threat of release of a contaminant which presents a substantial danger to the public health or safety or the environment, or causes a release of non-hazardous substance pursuant to Section 501(g) shall be liable for the response costs and for damages to natural resources. The department, Commonwealth agency, or a municipality which undertakes to abate a public nuisance under this Act or take a response action may recover those response costs and natural resource damages in an action in equity brought before a court of competent jurisdiction. In addition, the [Environmental Hearing Board of the Commonwealth] is given jurisdiction over actions by the Department *to recover response costs in* damages to natural resources.

35 Pa.S.A. § 6020.507(a).

**6. § 6020.1101. Public nuisances**

A release of a hazardous substance or a violation of any provision, regulation, order or response approved by the Department under this Act shall constitute a public nuisance. Any person allowing such a violation shall be liable for the response costs cause by the release or violation. The board in any court of competent jurisdiction is hereby given jurisdiction over actions to recover response costs.

35 Pa.S.A. § 6020.1101.

**7. § 9607. Liability**

(a) **Covered persons; scope; recoverable costs and damages; interest rate; "comparable maturity" date**

Notwithstanding any other provision or rule of law, and subject only to defenses set forth in subsection (b) of this section—...

.... [a responsible party shall be liable for—]

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

(D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

42 U.S.C. § 9607.

ed in HSCA.[8] *Id.* citing *Pinole Point Properties, Inc. v. Bethlehem Steel Corp.,* 596 F.Supp. 283, 288 (N.D.Cal.1984). Second, section 107 and other sections of CERCLA specifically refer to actions brought under section 107, whereas HSCA merely refers to civil actions brought under sections 507 and 1101, not section 702. *Id.* at 265.

At the conclusions of *Lutz II,* the court left open the possibility that a private cause of action may exist by the interaction of sections 1101 and 107. That door was closed, however, in *Lutz III,* 730 F.Supp. 1328 (M.D.Pa.1990). In its final rejection of the private right theory, *Lutz III* examined the language of HSCA, compared it with the provisions of the Pennsylvania Solid Waste Management Act ("SWMA"), and attempted to interpret the legislative history in order to gauge the intent of the General Assembly.

First, the court compared HSCA with the language contained in the SWMA, concentrating on the enforcement and remedies section of the two statutory schemes. It was determined that while the statutory enforcement provisions were not identical, those provisions that were similar led the court to find that, like the SWMA, no private cause of action was contained under HSCA.

In coming to this conclusion, the court relied extensively on the case of *Fleck v. Timmons,* 374 Pa.Super. 417, 543 A.2d 148 (1988), in which the Pennsylvania Superior Court held that no private cause of action was contained under the SWMA. Making a parallel comparison to the language of the SWMA, and finding guidance from the reasoning set forth in *Fleck,* the *Lutz III* court determined that when enacting HSCA, the Pennsylvania General Assembly consistently indicated that the Commonwealth's Department of Environmental Resources ("DER") was the responsible party for pursuing the specific remedies and enforcement techniques provided for under both the SWMA and HSCA. Thus, the General Assembly delegated to the DER the enforce authority of these environmental statutes. The participation of private citizens, however, was left to a right of intervention as provided in section 6018.615 of the SWMA and section 6020.1111 of HSCA.

After analyzing the specific language of the statute, the court bolstered its conclusion by looking to the legislative history of HSCA. Particularly, the court concentrated on the fact that the General Assembly deleted a section from an earlier version of the HSCA bill which expressly granted a private cause of action for response costs. *Lutz,* 730 F.Supp. at 1332 citing H.B. 1852, Printer's No. 3428, section 509. Thus, the court maintained that the legislature considered the inclusion of a private right of action, but acted to exclude such a right.

Finally, in addition to the deleted section of the initial bill, the court pointed to HSCA's declaration of policy. Under section 6020.102, it states, in relevant part:

(12) The following are the purposes of this act:

(ii) Establish independent authority for *the department* ... to take other appropriate response actions and recover from responsible persons its costs for conducting the responses.

*Id.* at 1333, citing 35 Pa.S.A. § 6020.102(12)(ii). (emphasis added) In this expressed pronouncement, the court found that since DER, and no other, is named by the legislature, that agency is entrusted with the authority to enforce the provisions of the Act, save the intervention and citizen suit segments.

Thus, based on a comparison of the Solid Waste Management Act and the Hazardous Sites Cleanup Act; the interpretation of

---

**8.** Specifically, it is stated in *Lutz II:*

> Contrary to plaintiffs' suggestion, section 702(a) of the Act and section 107(a) of CERCLA are not "identical". Section 107(a) of CERCLA begins with the following preface: "Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section...." While section 107(a) of CERCLA has been given a broad interpretation based in part on this opening clause, no such provision is found in section 702 of the Act.

*Lutz II,* supra at 265. (citations omitted)

Pennsylvania courts as to the restrictive nature of the terms contained under the Solid Waste Management Act; and the actual language of HSCA under its declaration of policy, the court concluded that no private cause of action exists under the Hazardous Sites Cleanup Act.

### 2. *General Electric Environmental Services v. Envirotech, Corp.—A Private Cause of Action*

Over one year later, in *General Electric Environmental Services, Inc. v. Envirotech Corp.*, 763 F.Supp. 113 (M.D.Pa.1991) (Rambo, J.), the court came to a contrary conclusion and held that a private cause of action exists under the Hazardous Sites Cleanup Act. Although *Envirotech* acknowledged the *Lutz* decisions, the court respectfully disagreed with its reasoning and outlined a comprehensive rebuttal.

The basis for the *Envirotech* court's decision lies in consideration of the actual language of the Hazardous Sites Cleanup Act; its legislative history; a comparison to the Comprehensive Environmental Response, Compensation and Liability Act of 1980; and a showing of deference to the enforcing agency, the Pennsylvania Department of Environmental Resources, which supports the finding of a private right of action.

The court began its analysis by looking to the Act's declaration of policy emphasizing that traditional legal remedies are not adequate and extraordinary enforcement remedies are needed to achieve the appropriate cleanup of hazardous waste sites. *Envirotech, supra* at 115 citing 35 Pa.S.A. § 6020.102(5) and (9). Acknowledging that such remedial statutes should be liberally construed to achieve their purpose, the

court then turned to other provisions of HSCA.

Citing section 1101 as the "tip of the HSCA spear", the court found it to be the source of a private party's right to seek recovery for violations of the Act. The scope of that recovery, or what the *Envirotech* court termed the "target" of the Act, is found under section 702.[9] In explaining such a reading of section 702, the court found:

> If, as the defendant urges, subsection (a)(3) were read as establishing liability only to government entities, then (a)(3) would merely be a restatement of the liability established by the previous two sections. This is an incongruous result and cuts against the plain meaning of the words as defined by the statute.

*Envirotech, supra* at 117, citing *Commonwealth v. Lobiondo*, 501 Pa. 599, 462 A.2d 662, 664 (1983); 1 Pa.C.S.A. § 1922(a). In finding that section 702(a)(3) allows for a private right of action, the court believed that it was following the traditional rules of statutory interpretation by giving full meaning to the words of the statute without obtaining an absurd or inconsistent result.

As for the legislative history and, in particular, the deletion of the section concerning private causes of action, the court gives an alternative explanation to that provided in *Lutz III*:

> In deleting the provision in Section 509 [10] granting private parties the right to recover response costs along with provisions authorizing suit for personal injury and property damages, the legislature may well have been excising language which was redundant of the liability imposing language of Section 702(a)(3). Certainly, the language of Section

---

**9.** By relying on a combination of provisions, rather than solely on section 6020.702, the *Envirotech* court implicitly agreed with the holding in *Lutz II* that the liability provision of HSCA does not by itself create a private right of action. *See Lutz II*, 725 F.Supp. at 265 (M.D.Pa.1989). This differs from the analysis rendered by the federal courts concerning a private right of action under CERCLA.

**10.** The deleted section 509 read:

> Any person responsible for a release of a hazardous substance under this act shall also be strictly liable for any personal injury or property damage resulting from the release or for any response costs incurred which are not inconsistent with a departmental action pursuant to Section 505.

*Envirotech, supra* at 117 citing H.B. 1852, Printer's No. 3428 at 41–42, 37 House Legislative Journal at 991–1039.

702(a)(3) suggests the creation of a right to recover response costs in private citizens. A similar right of action left alone in Section 509 would simply be restating a right already granted under Section 702(a)(3). The deletion of a statutory provision, under Pennsylvania law, does not necessitate the wholesale elimination of the subject of that provision from the statute.

*Envirotech, supra,* at 117. (footnote added and citations omitted)

More importantly, the court in *Envirotech* diverges from *Lutz III* by comparing HSCA's legislative history in terms of its federal counterpart, the Comprehensive Environmental Response, Comprehensive and Liability Act of 1980. Specifically, the court emphasized that a similar deletion of a private party empowerment provision for personal injury, economic expenses, and medical costs in the federal act did not deter courts from interpreting the statute as authorizing a private right of action for response costs. *Envirotech, supra* at 117.

The court continues to rebut the arguments presented in *Lutz III* by also stressing that too much emphasis was placed on section 102(12)(ii) of HSCA's declaration of policy. *See* 35 Pa.S.A. § 6020.102(12)(ii). Although this particular provision stresses the authority of the DER to take appropriate response action and to recover costs, *Envirotech* does not find this to be outcome determinative as to the full scope of the Act. The court notes that not all important provisions of HSCA are specifically mentioned in the policy section and several examples are then provided in the text of the opinion. *Envirotech* at 118. Instead the court emphasizes that the concept of a private right of action is in harmony with the overall design of the Act—i.e., "to arm the Commonwealth and its citizens with a legal sledgehammer to bring violators of hazardous waste regulations to justice, to award remunerations for cleanup costs incurred, and to deter other potential violators." *Id.* at 118 citing 35 P.S.S.A. § 6020.102(5) and (9).

In addition, under Pennsylvania rules of statutory construction, a court may consider the interpretation of similar statutes in order to interpret a State statute. The *Envirotech* court concluded that the appropriate statute to compare HSCA is not the regulatory Solid Waste Management Act, but rather, the remedial federal statute known as CERCLA. Similar provisions of HSCA and CERCLA are cited, including direct references in HSCA to CERCLA. *Envirotech* at 118–119. Any differences cited by the defendant, including the lack of reference to a CERCLA type contingency plan, were found to be inconsequential. *Id.* The court noted that the legislature is presumed to know the state of the law when it enacted HSCA. As such, the legislators would have been aware of the provision that created a private right of action in CERCLA. Thus, by enacting a similar provision in HSCA, the General Assembly must have intended the same result—i.e., that a private right of action would be created under the state statute. *Id.* at 119.

Finally, the court looked to the interpretation given by the Pennsylvania Department of Environmental Resources as to private causes of action under HSCA. As provided for under Pennsylvania law, the agency charged with administering a statute's regulations and remedies should be given deference as to its interpretation of the act's provisions. *Envirotech* at 120. (citations omitted) The *amicus curia* brief filed by the DER in *Envirotech* lays out a number of arguments in favor of finding a private right of action. Thus, the court relies on the DER's interpretation as one more reason to find a private right under the Hazardous Sites Cleanup Act of Pennsylvania.

## B. Analogous Federal Standard for Private Cause of Action

In both *Lutz* and *Envirotech*, the court used the words of the statute as well as its legislative history but came to differing conclusions as to whether a private cause of action exists under HSCA. In each case, the judge believed that the result reached was consistent with the language of the Act, appropriate in light of the legislative intent, and necessary to promote the stat-

ute's policy and effectiveness. It is obviously a matter upon which reasonable minds may differ.

In our attempt to reach a decision on this issue, we find it helpful to look to an analogous source on a related subject—i.e., the standard used by the federal judiciary for determining whether a private cause of action can be inferred within the purviews of a federal statute. The development of this standard is a relatively recent occurrence and has been adopted by some state courts, although Pennsylvania has not explicitly done so. *See Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975); *In the Matter of the State Commission of Investigation,* 108 N.J. 35, 527 A.2d 851 (1987); *Jalowiecki v. Leuc,* 182 N.J.Super. 22, 440 A.2d 21, 25–28 (1981); *Mann v. Oppenheimer & Co.,* 517 A.2d 1056, 1063–1066 (Del.Supr.1986); *Lock v. Schreppler,* 426 A.2d 856, 864–867 (Del.Super.1981); *Couch v. Delmarva Power & Light Co.,* 1991 WL 40874 (Del.Ch. March 20, 1991).

Under this standard, the courts have found that some combination of the following factors must be present in order to establish a private right of action:

(1) the plaintiffs are part of the class for whose special benefit the statute was passed;

(2) the indicia of legislative intent reveals congressional purpose to provide a private cause of action;

(3) a cause of action would further the underlying purposes of the legislative scheme; and

(4) Is the cause of action one traditionally relegated to state law so that it would be inappropriate to infer a cause of action based solely on federal law?

*Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 25 n. 8, 101 S.Ct. 2615, 2629 n. 8, 69 L.Ed.2d 435, 454 n. 8 (1981), citing *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975); *see also, Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 3233, 92 L.Ed.2d 650 (1986). All but the last of these factors are relevant to our analysis. The final element of the *Cort* test has routinely been eliminated when analyzing state statutes since it stems from the concept of federalism and the idea that the national government must show appropriate deference to state authority. *Jalowiecki,* supra 440 A.2d at 27; *Lock,* supra at 864, citing *Hurley v. Allied Chemical Corp.,* 164 W.Va. 268, 262 S.E.2d 757, 760–761 (Sup.Ct.1980).

(1) Special Class

■ As a starting point on this subject, we find it evident that the Pennsylvania Department of Environmental Resources is the principal actor in this statutory scheme. By the terms of the statute and the text of the Legislative Journal,[11] the DER is a member of the class for whose special benefit HSCA was passed. Key authorizing provisions explicitly refer to "the department"[12] and the official legislative history makes numerous refers to the DER in the passage of the Act.[13]

---

11. Under Pennsylvania law, the official legislative history of an act is contain in the Commonwealth's Legislative Journal. *See* 46 Pa.S.A. § 81 *et seq.*

12. Several references to "the department" are made throughout the Act. The following are just a few examples: 35 Pa.S.A. § 6020.102(12)(i) ("Authorize the department to participate ..."); 102(ii) ("Establish independent authority for the department to conduct site investigations ..."); 102(iii) ("Establish the fund to provide the department the financial resources needed ..."); 35 Pa.S.A. § 6020.301 ("The department has the following powers and duties ..."); 35 Pa.S.A. § 6020.501(a) ("... the department shall investigate and, ... the depart-

ment shall notify ..."); 35 Pa.S.A. § 6020.507(a) ("The department ... may recover those response costs ...").

13. For example, printed remarks by Senate Conference Committee member Fisher to be "included in the legislative history" provide that "[t]he bill would **authorize DER** to develop, administer, and enforce the state's investigation, assessment and cleanup of hazardous waste sites within the Commonwealth." Legislative Journal, Senate No. 60 at 2746 (October 13, 1988) (emphasis added).

In the House, printed remarks by House Conference Committee member George explained that "[t]he new Hazardous Sites Cleanup Act

This is not to say, however, that DER makes up the exclusive class for whose special benefit this Act was passed.[14] Under section 1115, the General Assembly provided for citizen suits allowing individuals to act as "private attorney generals" to obtain enforcement of HSCA. 35 Pa.S.A. § 6020.1115; *Cf. Regan v. Cherry Corp.,* 706 F.Supp. 145, 149 (D.R.I.1989). Moreover, section 1111 allows for a party to intervene in any proceedings brought under the Act if they have an interest which is or may be adversely affected. 35 Pa. S.A. § 6020.1111.

Finally, section 1101 provides that "[a] release of a hazardous substance ... shall constitute a public nuisance. Any person allowing such a release ... shall be liable for the response costs caused by the release ..." 35 Pa.S.A. § 6020.1101. No specific limitation as to who can sue for response costs under this provision is given nor does it distinguish between government versus private causes of action. The scope of liability for response costs includes "other reasonable and necessary or appropriate costs of response incurred by any other person." *See* 35 Pa.S.A. § 6020.702(a)(3) Under section 103, person is defined as

An individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, authority, interstate body or other legal entity which is recognized by law as the subject of rights and duties. The term includes the Federal Government, state governments and political subdivisions.

35 Pa.S.A. § 6020.103.

In order to give every word of the statute its full meaning without obtaining an absurd or inconsistent result, the scope of section 702(a)(3) must give a "person" other than the government the right to recovery, otherwise, this section would be redundant and serve no useful purpose. We say "other than the government" since the prior two provisions of the statute allow for government recovery for interim [§ 702(a)(1)] and remedial [§ 702(a)(2)] response costs. Reading section 702(a)(3) as also authorizing government recovery for response costs would be repetitious and would not give sufficient meaning to this provision of the statute.

In order to give full significance to section 702, we find that plaintiffs such as the ones before this court are included within the class for whose special benefit HSCA was enacted.[15] Accordingly, it is the find-

will fill up many of the gaps which currently exist in **the department's** overall enforcement strategy ..." Legislative Journal, House No. 61 at 1718 (October 13, 1988). *See also, Id.* at 1719, Remarks of Rep. Freeman ("... this legislation gives **State Government** the necessary tools and resources that are needed to begin the very arduous task of cleaning up the over 2,000 potential hazardous waste sites across the Commonwealth.")

14. Addressing a related issue, a federal court has held that plaintiffs similar to the individuals before us are the target group protected by HSCA. In *Fallowfield I, supra* at 46, the court looked to the declaration of policy contained under the Act and concluded that for purposes of negligence per se, private parties were included within the sphere of protection of HSCA. *Id.* citing 35 P.S. § 6020.102. The first prong of both the negligence *per se* standard and the federal private cause of action analysis is similar in nature except the former speaks in terms of the protection afforded the class, whereas the latter addresses the benefit bestowed on the class. *Cf.* Restatement (Second) of Torts § 286(a) and *Merrell Dow, supra* 106 S.Ct. at 3233.

The *Fallowfield* court found that by declaring the policy behind the Act was "to protect the citizens of this Commonwealth from the dangers of the improper disposal of hazardous and solid waste", the General Assembly invoked its inherent police power to protect the health, safety, and welfare of its citizens. On the more narrow issue of whether private party plaintiffs are the individuals for whose special benefit the statute was enacted, the *Fallowfield* court was silent. *See Fallowfield v. Strunk,* Civ. No. 89–8644 and 90–4431, slip op. (E.D.Pa. Feb. 11, 1991) (1991 WL 17793) (*Fallowfield II*).

15. There may be some doubt as to what context these "other persons" described under section 702(a)(3) may recover. It may be as a private party under section 1101. On the other hand, can section 702 be interpreted to narrow the scope of recovery by those who intervene under section 1115 to "response costs" rather than the more broad economic and personal injury expenses? We believe the former is the appropriate reading, however, since the Act only refers to recoveries under sections 1101 and 507, not section 1115. *See Lutz II,* supra at 265.

ing of this court that the Plaintiffs fall within the class for whose special benefit the Hazardous Sites Cleanup Act was passed. In so finding, we believe that the first prong of the federal private cause of action standard is satisfied.

### (2) Legislative Intent

■ The second prong,—i.e., the legislative intent to provide a private cause of action,—can be gleaned from the language of the statute and its legislative history. Unfortunately, the increasing complexity of legislation on environmental topics and the sparse amount of information as to Pennsylvania's legislative history has served to frustrate matters.

Legislative history in Pennsylvania is not as comprehensive as its federal counterpart. Rather, the Pennsylvania General Assembly publishes the Legislative Journal of the House and Senate containing the official legislative history of an enactment. 46 Pa.S.A. § 81, *et seq.* The remarks concerning HSCA concentrate on five major junctures in the passage of this legislation: (1) passage by the House of Representatives of the initial bill at 37 House Legislative Journal 991–1039, June 7, 1988; (2) the amended version by the State Senate at 51 Senate Legislative Journal 2548–2560, July 5, 1988; (3) the House of Representatives concurrence in the Senate amendments at 52 House Legislative Journal 1535–1539, July 13, 1988; (4) passage by the House after conference committee report at 60 House Legislative Journal 1717–1720, October 13, 1988; and finally, (5) passage by the Senate after conference committee report at 61 Senate Legislative Journal 2746–2748, October 13, 1988. *See* Zubeck, *History of House Bills and Resolutions,* Sessions of 1987 and 1988 Final Issue, A–262. Unfortunately, the rationale for any additions, deletions and modifications to the original bill on the subject of private causes of action is not discussed.

Due to the increasing complexity of legislation, some of the legislative history may

be confusing, if not outright conflicting. This court has commented in the past on the precarious position legislative history plays in these controversial matters. *Ambrogi,* supra at 1246, n. 16. No one representative or political party passes legislation and the reasons for voting in favor or against certain legislation lies in the hearts and minds of the various lawmakers. With legislation such as this, where almost all agree that waste disposal regulation is necessary, but the means to that end engenders heated debate, the Act's history may be interpreted in various ways.[16] Under these circumstances, it is understandable that legislative intent, partially derived from the legislative history, is but one prong in the overall scheme of statutory interpretation that guides the court in its analysis.

As outlined in the *Lutz III* and *Envirotech* opinions, there are two interpretations concerning the passage of HSCA. On the one hand, the legislative history has been read to exclude a private right of action. Specifically, by deleting the provision calling for a private right of action and retaining the citizen suit and intervention provisions, it has been argued that the General Assembly expressly considered, yet rejected, the creation of such a private right. *See generally, Lutz III, supra.*

A contrary reading of the legislative history concludes that because the terms of HSCA closely track that of the federal CERCLA statute, the exclusion of the proposed private right of action, along with any victim compensation provisions, mirrors the federal legislative debate on this issue. It is argued that in passing a liability provision almost identical to its federal counterpart, the legislators knew the effect of these terms and acquiesced in it. Thus, recognizing the circumstances under which CERCLA had been passed and judicial findings of a private right of action under the general liability provisions of the federal act, the state version with the proposed express private right provision would have

---

**16.** *See generally,* Remarks of Rep. Manderino, 61 House Legislative Journal 1718 ("While virtually everyone has supported a State hazardous waste cleanup program, the approaches taken by various interest groups were varied, and often they were divergent.")

been redundant. Accordingly, the General Assembly removed it. *See generally, Envirotech, supra.*

Both of these interpretations are equally plausible and neither can be rejected out of hand. Thus, the legislative history is ambiguous as to this component of HSCA. Accordingly, although legislative intent is "[t]he key to the inquiry", *Middlesex,* 453 U.S. at 13, 101 S.Ct. at 2622, the intent of the General Assembly will have to come more from the actual language of the Act, placed in perspective by the limited legislative history and general regulatory scheme. This search for legislative intent will include looking for the policy behind the legislative provision, attempting to perceive the purpose for which it was enacted, and then, having ascertained that policy or purpose, we must determine whether a private right of action was intended to carry out its provisions.

As for the actual language of HSCA, there are no express provisions establishing a private right of action nor is there a prohibition against such a right. Section 507, which addresses actions to recover response costs, only makes reference to government entities—i.e., "the department, a Commonwealth agency, or a municipality". 35 Pa.S.A. § 6020.507. As we discussed in the previous section, however, it appears to this court that a combination of sections 1101 and 702(a)(3) acting in unison allows for a private cause of action. We come to this conclusion in part because no viable alternative to the meaning of section 702(a)(3) has been presented to this court nor does the case law denying a private

right explain what meaning should be given to this section.

The terms of HSCA are remedial in nature and were enacted in part to "... ensure that no site will remain a danger to the public or environment for the lack of the proper legal tools." Remarks of Representative George, No. 61 House Legislative Journal at 1718 (Oct. 13, 1988). Whether the use of those "legal tools" is confined exclusively to the DER, however, is of major concern here. In attempting to find an answer, we note that throughout its passage, the HSCA bill was compared to the federal Superfund [17] legislation and we believe that CERCLA is the appropriate statute to assist in interpreting the terms and scope of HSCA.[18] This is not to say that CERCLA was the single model upon which the General Assembly relied in fashioning HSCA. By its very terms and structure, reliance on the remedies and enforcement provisions of the Solid Waste Management Act is also evident. The result is a hybrid statue with a foundation in both CERCLA and SWMA.

Almost identical language found in section 9607 of CERCLA is contained under section 6020.702 of HSCA. It is taken for granted that the language contained in the former statute establishes a private right of action. *Walls v. Waste Resource Corp.,* 761 F.2d 311, 318 (6th Cir.1985) and cases cited therein; *See also, Wickland Oil Terminals v. ASARCO, Inc.,* 792 F.2d 887 (9th Cir.1986). Its Pennsylvania counterpart is not so clear.

It has been emphasized in *Lutz II,* 725 F.Supp. at 265, that HSCA differs in two

---

**17.** The "Superfund Act" is a term used throughout the legislative debate to describe both HSCA and the federal Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), as amended by the Superfund Act of 1986 ("SARA"). *See also, Ambrogi,* 750 F.Supp. at 1236, n. 1; Frick and Sullivan, *Environmental Regulatory Glossary* (5th ed.1990) at 396; Stoll, *Environmental Law Handbook,* (10th ed.1989) at 75.

**18.** Similar to CERCLA, the state statute was described as a "gap filler" for existing environmental legislation. *Cf.* Remarks of Rep. George, 61 House Legislative Journal at 1718 (Oct. 13, 1988); Remarks of Rep. Brown, 126 Cong.Rec.

H9176 (daily ed. Sept. 19, 1983). For further comparisons and references to CERCLA, see the following: Remarks of Rep. Hayden; 37 House Legislative Journal at 996, 1010 (June 7, 1988); Remarks of Rep. Reber; 37 House Legislative Journal at 1001 (June 7, 1988); Remarks of Rep. Yandrisevits, 37 House Legislative Journal at 1006, 1007, 1010 (June 7, 1988); Remarks of Rep. Snyder, 37 House Legislative Journal at 1007 (June 7, 1988); Remarks of Sen. Fisher, 51 Senate Legislative Journal at 2555 (July 5, 1988); Remarks of Rep. George, 61 House Legislative Journal at 1718 (Oct. 13, 1988); Remarks of Sen. Ryan, 53 Senate Legislative Journal at 1536 (July 13, 1988).

respects. First, the introductory phrase to the liability section of CERCLA is broader than that of HSCA. Second, although other provisions of CERCLA make refers to causes of action under section 9607, no like references are made to section 6020.702 in HSCA.

Although we do not intend to diminish their place in the pattern of reasoning that establishes a federal right under CERCLA, we find the lack of these factors under HSCA does not change the overall result in light of the other, more pivotal elements regularly cited by the courts as the reason for establishing a private right of action. Of the litany of cases traditionally cited by the courts as establishing a private cause of action under CERCLA, only one mentions the two factors relied upon by *Lutz.*

In *Pinole Point Properties v. Bethlehem Steel Corp.,* 596 F.Supp. 283, 289 (N.D.Calif.1984), the court lists a series of reasons to justify its finding that a private right exists under CERCLA. The court found, in relevant part:

> First of all, the opening clause of section 107 lends itself to broad interpretation. The opening clause states a severe limitation on defenses available in cases under section 107: "Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section ...". This limitation on defenses surely suggests the existence of a basis for liability separate and independent from liability under sections 111 and 112.
>
> . . . .
>
> Further support of the separateness of the sections is evidenced by the language of section 108(c) which provides that "any claim authorized by section 9607 *or* 9611 of this title may be asserted against any guarantor ..." 42 U.S.C. § 9608(c) (emphasis added).

*Id.* at 288 (footnote omitted).

Because HSCA does not contain a similar provision limiting defenses available to a defendant nor does its enforcement and remedies section mention actions brought under the liability provision, it is argued that the court should interpret the statute to only allow public enforcement and recovery. We cannot agree.

First, one must place the statement of the *Pinole* court in perspective. The court was attempting to justify a broad interpretation to allow for private recovery. The above cited provisions are just two of several factors and, in retrospect, factors which have not been frequently cited by other courts in their reasoning. *See Walls,* supra; *Bulk Distribution Centers, Inc. v. Monsanto Co.,* 589 F.Supp. 1437, 1442–44 (S.D.Fla.1984); *Jones v. Inmont Corp.,* 584 F.Supp. 1425, 1428 (S.D.Ohio 1984; *City of Philadelphia v. Stepan Chemical Company,* 544 F.Supp. 1135, 1140–44 (E.D.Pa. 1982). Second, the *Pinole* court was seeking to refute the defendants' argument that government action was a condition precedent to any and all private liability. In rejecting the defendants' argument, Judge Aguilar states:

> ... the language of section 107(a)(4)(B) is extremely broad and inclusive. That section states that "[a]ny person who ... owned or operated any facility at which such hazardous substances were disposed of ... shall be liable for any other necessary costs of response *incurred by any other person* consistent with the National Contingency Plan." 42 U.S.C. § 9607(a)(4)(B) (emphasis added). It is difficult for the Court to imagine statutory language that would more clearly grant a private cause of action.

*Pinole,* supra at 288. Similar statutory language found by the *Pinole* court to "clearly grant a private right of action" is contained under HSCA—i.e., "[o]ther reasonable and necessary or appropriate costs of response incurred by any other person". In passing this provision, the General Assembly created a right of reimbursement for response costs incurred by "any other person" and thus created a private right of action when read in conjunction with section 1101. To rule otherwise would have us find a right to be reimbursed and a remedy to obtain the cleanup of a site, but no legitimate mechanism to realize that right or remedy.

The other factors which have been cited by the federal courts in establishing a private right of action are also applicable to HSCA. For example, a review of the terminology in both CERCLA and HSCA demonstrates a preoccupation with government action. The explanation given for this by the court in *Bulk Distribution,* supra at 1443, is germane to both superfund statutes:

Although private parties may recover response costs under section 9607(a)(4)(B), the fact remains that much of CERCLA's language deals with government-sponsored clean-up efforts. Superfund provides a reliable way for the government to pay the clean up of *some* abandoned and inactive waste sites. Such sites generally require prompt attention, and may lack a readily identifiable responsible party from whom compensation can be sought. With Congress' attention focused on government involvement in waste site clean up, it comes as no surprise that those portions of CERCLA's text and legislative history discussing a private party's right against *other private parties* vis-a-via the Fund are ill-defined.

Accordingly, the language of CERCLA and HSCA concentrates on government action and, from the heated debate in the General Assembly, the funding mechanism for both acts is controversial, if not inadequate. *See* 37 House Legislative Journal, 1015–20 (June 7, 1988). Thus, the need for private right of actions becomes a benchmark for both statutes. Like CERCLA, the Pennsylvania statute was designed primarily to facilitate the prompt cleanup of hazardous waste sites by placing the ultimate financial responsibility for cleanup on those responsible for the hazardous wastes. Allowing a private action to recover response costs from responsible parties under HSCA is consistent with the language of sections 1101 and 702 and with the legislative purpose underlying HSCA as a whole.

In addition, the statutory structure of CERCLA and HSCA concerning non-governmental enforcement are similar in nature. Citizen suits under CERCLA are pro-vided for at 42 U.S.C. § 9659 and intervention at § 9613. Citizen suits under HSCA are codified at 35 P.S. § 6020.1115 and intervention at § 6020.1111. There is no similar provision for citizen suits under the SWMA, the comparative regulatory statute used by the *Lutz* court. There is, however, a right to intervene. 35 Pa.S.A. § 6018.615; *See also,* Mattioni, *Pennsylvania Environmental Law Handbook* (5th ed. 1990) at 216.

Accordingly, based on the language of the statute and its legislative history, we hold that in order to promote the goals and effectiveness of this legislation, it was the intent of the General Assemble to create a private right of action.

### 3. *Purpose and Scheme*

■ In *Lutz III,* the court premised part of its decision on a finding that the General Assembly intended to leave the enforcement mechanisms to an administrative agency with limited participation by citizens under the intervention and citizen suit provisions. There is some credence to this interpretation of the legislative scheme, although ultimately, we reject it.

Under this approach, the purpose of the Act is not to provide a universal mechanism for both private and public cleanup activities, but rather, HSCA's scope is aimed at achieving full state government participation in hazardous cleanup efforts and enhance certain provisions of CERCLA which the General Assembly thought lacking. *See generally,* Morissette & Hourcle, 31 A.F.L.Rev. 137 at n. 4 and 36; 35 Pa. S.A. § 6020.102(8); 61 House Legislative Journal 1718 (Oct. 13, 1988).

There are several factors weighing in favor of this interpretation. For example, the specific language of the Act primarily addresses the "powers and duties" of government entities. Specifically, Chapter One of HSCA provides a "Declaration of policy" which repeatedly refers to "the department" although no direct refers is made to a private right of action. *See* 35 Pa.S.A. § 6020.102 Chapter Three delineates the powers and duties contained un-

der the Act and reference solely to government entities and not private parties. *See* 35 Pa.S.A. § 6020.301 (Powers and duties of department); 35 Pa.S.A. § 6020.303 (Powers and duties of Environmental Quality Board); 35 Pa.S.A. § 6020.313 (Powers and duties of commission). The chapter entitled "Response and Investigation" discusses interim and remedial response actions by (1) "the department", (2) "the owner, operator or any other responsible person", and (3) the Governor in emergency matters. 35 Pa.S.A. § 6020.501(a) and (g). No reference is made to private parties. Finally, under section 507 of the Act entitled "Recovery of response costs", it is stated, in relevant part:

> ... The department, a Commonwealth agency, or a municipality which undertakes to abate a public nuisance under this act or take a response action may recover those response costs and natural resource damages in an action in equity brought before a court of competent jurisdiction ...

35 Pa.S.A. § 6020.507(a). Nowhere in this section are private individuals discussed, but again, only government entities are identified.

The legislative history of the Act demonstrates that the only time a private right of action was explicitly proposed, it was stricken from the bill. Although it has been expressed that this is similar to the passage of CERCLA, that is not the case. The deleted federal legislative amendment proposed recovery for essentially three broad items: "medical expenses or property or income loss." *See Artesian Water Co. v. Government of New Castle County,* 659 F.Supp. 1269, 1286 (D.Del.1987), *aff'd,* 851 F.2d 643 (3d Cir.1988), citing 126 Cong. Rec. S14,964 (daily ed. Nov. 24, 1980) (statement of Sen. Randolph). By declining to allow for the recovery of these expenses, federal courts are required to make the "fundamental, if elusive, distinction between response costs and economic losses." *Id.*

In HSCA's case, however, the provision deleted by the General Assembly specified personal injury, property damages, *or re-sponse costs. See Envirotech,* supra at 117, citing HB 1852, Printer's No. 3428 at 41–42, 37 House Legislative Journal at 991–1039. By expressly including the latter category, the state version differs from the federal bill in that both economic costs *and* response costs were excluded from consideration. This was accomplished, however, since the deleted state version specifically mentioned "response costs", whereas to this court's knowledge, the federal provision did not use that term of art.

In addition, we note that when Congress revised the 1980 CERCLA legislation through the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), it provided for "substantial and meaningful involvement by each State in initiation, development, and selection of remedial actions to be undertaken in that State." 42 U.S.C. § 9621(f). As a result, many states have "seized the initiative to develop an aggressive state role in environmental protection and enforcement." Morissette & Hourcle, *State Environmental Laws Redefine "Substantial and Meaningful Involvement",* 31 A.F.L.Rev. 137 (January 1989), citing Pennsylvania Hazardous Sites Cleanup Act at n. 36.

In that vein, the Pennsylvania General Assembly enacted its only Superfund Act when it passed HSCA in 1988. As discussed previously, the language of the Act reflects the influences of CERCLA. Moreover, reference to CERCLA and the importance of state participation were expressed in the opening provisions of HSCA's declaration of policy. First, under section 102, the Act provides:

> The General Assembly finds and declares as follows:
>
> . . . .
>
> (7) The Federal Superfund Act provides numerous opportunities for states to participate in the cleanup of hazardous sites. It is in the interest of the citizens of this Commonwealth that the Commonwealth be authorized to participate in such cleanups and related activities to the fullest extent.

35 Pa.S.A. § 6020.102 (footnote omitted). Further, in defining the purposes of the

Act, two provisions appear to lend support to this argument:

(12) The following are purposes of this act:

(i) Authorize the department to participate in the investigation, assessment and cleanup of sites under the Federal Superfund Act to the full extent provided by that act.

. . . .

(v) Establish and maintain a cooperative State and Federal program for the investigation and cleanup of sites containing hazardous substances or contaminants and for the replacement of affected water supplies and to take other appropriate response actions.

35 Pa.S.A. § 6020.102(12)(i) and (v).

This participatory purpose is also reflected by several references in the Pennsylvania Legislative Journal. For instance, in discussing the various amendments proposed to the initial bill, Representative Hayden stated:

... When the Federal Superfund Act was reauthorized in October of 1986, a number of the congressional folks involved in that case said that we should give individual States the opportunity to enact, in a sense, their own standards and to be able to make individual judgments for their own citizens with respect to which particular elements would be defined as "contaminants."

37 House Legislative Journal 1010 (June 7, 1988). In an attempt to justify a proposed amendment in the House, Representative Reber explained:

Additionally, we are under the mandate under the Federal SARA (Superfund Amendments and Reauthorization Act) statute to come into compliance with certain aspects of Federal law; to, by October of 1989, be in a position to certify some form of siting for our hazardous waste remediation as well as a hazardous waste site for ongoing business.

37 House Legislative Journal 1029 (June 7, 1988); see also Prepared Remarks of Sen. Fisher, 60 Senate Legislative Journal 2747 at "Hazardous Waste Facilities Siting."

Moreover, all references in the Legislative Journal are restricted to government action in the cleanup of hazardous sites. When introduced for final passage in the State Senate, the prepared remarks to "be included in the legislative history" indicate that "[t]he bill would **authorize DER** to develop, administer, and enforce the state's investigation, assessment and cleanup of hazardous waste sites within the Commonwealth." Remarks of Sen. Fisher, 60 Senate Legislative Journal 2746 (October 13, 1988). In the House, on the day of passage, Representative Freeman indicated that "this legislation gives State Government the necessary tools and resources." Remarks of Rep. Freeman, 61 House Legislative Journal 1719 (October 13, 1988).

Finally, in a long discussion as to the interaction between HSCA and other state laws, Representative George lays out the statutory scheme to be followed by the DER:

A third major concern of many has been this bill's relation to other laws. HB 1852 is designed to be used in conjunction with other existing environmental statutes such as the Solid Waste Management Act and the Clean Streams Law. The new Hazardous Sites Cleanup Act will fill up many of the gaps which currently exist in **the department's** overall enforcement strategy and will help ensure that no site will remain a danger to the public or environment for the lack of the proper legal tools ... The bill does limit **the department's authority** to issue cleanup orders or to recover its costs of performing a final cleanup unless they have first attempted to enforce other applicable laws. While this approach recognizes the fact that certain responsible persons have obtained permits from the department to conduct activities at the site, it also **gives the department the ability to use the new law** whenever necessary to achieve the cleanup of a site ...

The purposes of the limitations described above are to encourage the site owner or operator to cooperate **with the Department of Environmental Resources** in order to abate a release or threatened permit. An owner or opera-

tor of a site who does not voluntarily cooperate and comply with the department's orders under other laws is given the additional opportunity to escape from Superfund liability if he can demonstrate to the Environmental Hearing Board or a court that there was no release or threatened release at his site. For this purpose, a new supersedeas procedure is created which is totally separate from any supersedeas which may be obtained under the Solid Waste Management Act or other applicable environmental laws. This special supersedeas should have limited utility, however, since the Environmental Hearing Board or court is restricted solely to the question of whether a release or threatened release exists.

HB 1852 is a vast improvement over the Federal cleanup program and existing State environmental laws. It will **allow the Department of Environmental Resources** to clean up sites not on the National Priority List, to accelerate the pace of cleanup on some Federal Superfund sites, and to apply more stringent cleanup standards where appropriate to protect the environment and the health and safety of the citizens of the Commonwealth. While general cleanup standards will be promulgates by regulation, **the department** will also be able to apply special standards on a case-by-case basis
. . .

*See generally,* Remarks of Rep. George, 61 House Legislative Journal 1718 (October 13, 1988) (emphasis added).

Thus, both the terms of the statute and the legislative history give some support to the concept of limiting the scope of HSCA to public enforcement. This is not an unknown approach to statutory enforcement and has been used by state legislatures and Congress. By withholding a private right of action and relying instead on public enforcement, the legislative branch is expressing its concern with obtaining more accurate implementation and more coordinated enforcement of a regulatory scheme. *See Fleck v. Timmons,* 374 Pa.Superior Ct. 417, 543 A.2d 148 (Pa.1988); *See also, Merrell Dow Pharmaceuticals Inc. v. Thomp-*

*son,* 478 U.S. 804, 106 S.Ct. 3229, 3244, 92 L.Ed.2d 650 (Brennan dissent).

After careful consideration of the issues raised by this case, this court rejects the narrow scope of purpose advocated above and instead, embraces the all encompassing remedial approach which includes a private right of action under HSCA. Though the reasoning in the *Lutz* opinions is academically sound and provides a "degree of analytic neatness", the result does not achieve the greater good that we believe the General Assembly intended. *See Stepan Chemical,* 544 F.Supp. at 1142. Practical application requires the right of private individuals to bring suit to fulfill the goals of this legislation.

A remedial environmental statute such a HSCA warrants the broadest interpretation consistent with the express language of the statute. *Fleck v. Timmons,* 374 Pa.Super. 417, 424, 543 A.2d 148 (1988), citing *Stepan Chemical,* supra; *See also,* 1 Pa.C.S.A. §§ 1921(b) and 1928(c). Although the arguments presented by the Defendant appears to conform to the legislative scheme for Pennsylvania's environmental regulations, the one strong item which causes this court to hesitate to accept such a conclusion is that no reasonable or legitimate alternative reading of section 702(a)(3) has been provided.

If the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly, 1 Pa.C.S.A. § 1921(a), we must give full meaning to the terms of the Act. To accept the premise that no private right is created, section 702(a)(3) would appear to be only a redundant phrase by allowing the government to act as an intermediary to secure response costs for those private parties who seek to intervene in an action. On the other hand, if this provision is read to establish a remedy to be afforded private citizens, the words of the statute are given there fullest, legitimate, and broadest interpretation.

Moreover, if it was the intent of the legislature to empower the DER with the cleanup of hazardous waste sites, that intent is not defeated by, in addition to

DER's authority, a private right is also established. By making this finding, this court reads this remedial statute in the broadest terms possibly to achieve its purpose of remedying the perceived mischief— i.e., to clean up hazardous sites. The introductory phrase of the legislation begins with the "An Act providing for the cleanup of hazardous waste sites" only to be followed by "providing further powers and duties of the Department of Environmental Resources and the Environmental Quality Control Board ...", which could be interpreted to demonstrate the priority of concerns envisioned by the state legislature. 61 House Legislative Journal 1717 (Oct. 13, 1988); 60 Senate Legislative Journal 2746 (Oct. 13, 1988); *See also*, 1 Pa.C.S.A. § 1924.

Finally, two other factors persuade this court to find a private right under HSCA. The Pennsylvania Department of Environmental Resources, the agency which is indisputably assigned the bulwark of the enforcement provision in HSCA, has indicated that it would serve to promote the goals of the Act by providing a private right. It is that agency's position that a private right is imperative to the successful and efficient enforcement of HSCA. We should and are compelled to show deference to the administrative agency assigned to enforce a statutes provisions.

Second, responding to the needs for developing a new body of law to provide relief from the insidious forms of injury caused by hazardous substances, the General Assembly passed legislation such as the Hazardous Sites Cleanup Act. This fact is memorialized in HSCA under the statement of purpose outlined at section 102(5):

> Traditional 'legal' remedies have not proved adequate for preventing the release of hazardous substances into the environment or for preventing the contamination of water supplies.... It is therefore necessary to provide new remedies to protect the citizens of the Commonwealth against the release of hazardous substances....

35 Pa.Stat.Ann. § 6020.102(5) (Purdon Supp.1990). We believe that these "new remedies" include the right of private parties to assert a cause of action under the Commonwealth's superfund statute.

### III

### *Conclusion*

It is the conclusion of this court that the intent of the Pennsylvania General Assembly when enacting the Hazardous Sites Cleanup Act was to empower the Commonwealth's Department of Environmental Resources with greater authority to deal with the growing problem of hazardous waste disposal. This is evident by the terms of the Act which repeatedly refer to "the department" and by the statements of the State Senators and Representatives on the day of the Act's passage in both Houses. As explained by the House Conference Committee Member, Representative George, "[t]he new Hazardous Sites Cleanup Act will full up many of the gaps which currently exist in the department's overall enforcement strategy and will help ensure that no site will remain a danger to the public or environment for the lack of the proper legal tools." Remarks of Rep. George, 61 House Legislative Journal 1718 (October 13, 1988).

In attempting to achieve this goal, the lawmakers relied heavily on the terms and legislative scheme outlined in the federal Superfund Act. As a result, the Commonwealth incorporated many of the concepts targeted by the national legislature, including the concept that a private right of action emanates from the words of this Act. As perceived by this court, there are two ways of looking at this "act of incorporation" by the General Assembly. Either the legislature inadvertently adopted the private right concept by its reliance and adoption of the terms of the federal act, or the legislature was aware of the terms of the act, was cognizant of the judicial interpretations finding a private right under these terms, and chose to enact those provisions. Since there is evidence that they relied on judicial interpretations in their

decision-making process [19] and we must presume that the legislature intended to given meaning to all of the provisions of what they enacted, we believe the latter is the only alternative.

We do not blindly make this ruling today and we are aware of some troubling aspects of our decision. This includes the fact that its been over two years since the *Lutz* opinions were rendered, and yet the General Assembly appears to have done nothing to rectify or overturn their effect. Moreover, HSCA does not contain a contingency plan similar to CERCLA that this court found so crucial in it previous rulings.[20] *See Ambrogi*, 750 F.Supp. 1233. Finally, limiting enforcement to public agencies would appear to fit with the overall legislative scheme to provide substantial and meaningful state involvement in the environmental scheme. Morissette, *State Environmental Laws Redefine "Substantial and Meaningful Involvement"*, 31 A.F.L.Rev. 137 (1989).

Yet we render this decision based primarily on four reasons: (1) there has been no legitimate alternative reading of section 702(a)(3) of HSCA provided to the court; (2) similar to CERCLA, a private right of action can be legitimately inferred from the words of the statute; (3) such a finding will not disrupt the administrative enforcement of the Act and it is actually welcomed by the enforcing agency; and (4) traditional remedies have failed and such a remedial statute will fill the gaps for all involved, including the DER as well as private citizens.

If this legislation is to be interpreted as a vast improvement over the Federal cleanup program and existing State environmental laws, in could not have been the intent of the state legislature to remove a basic component found to be so crucial in its federal counterpart. For if the purpose of the Act is to promote cleanup of a site, the lack of

a private right of action will inhibit this goal.

Accordingly, it is so ordered.

---

**19.** *See generally,* Remarks of Rep. Hayden, 37 House Legislative Journal at 1005 (June 7, 1988).

**20.** This may weigh in favor of the Defendant in another way. Although we make no finding on

this subject, one commentator has indicated that Pennsylvania's "applicable relevant or appropriate requirements (ARAR's) ... are more stringent than federal law." Morissette, 31 A.F. L.Rev. 137 (1989).