GENERAL ELECTRIC ENVIRONMEN-TAL SERVICES, INC., Plaintiff,

v.

ENVIROTECH
CORPORATION, Defendant.

Civ. A. No. 1:CV–90–1849.

United States District Court,
M.D. Pennsylvania.

March 18, 1991.

---

114

R. Hart Beaver, Beaver, Wolf & Harlan, Lebanon, Pa., Paul J. Lambert, James A. Ermilio, Bingham, Dana & Gould, Washington, D.C., for plaintiff.

Thomas W. Scott, Killian & Gephart, Harrisburg, Pa., for defendant.

Douglas F. Brennan, Com. of Pa., Dept. of Environmental Resources, Asst. Counsel, Office of Chief Counsel, Bureau of Hazardous Sites & Superfund Enforcement, Harrisburg, Pa., for amicus curiae.

## MEMORANDUM

RAMBO, District Judge.

Before the court is defendant Envirotech Corporation's motion to dismiss plaintiff's second cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion has been fully briefed and oral argument was held on February 14, 1991. The Pennsylvania Department of Environmental Resources ("DER") has filed an *amicus curiae* brief in support of plaintiff. The motion is therefore ripe for disposition.

*Background*

According to the complaint of plaintiff General Electric Environmental Services, Inc. ("GEESI"), in 1981 it purchased a facility in Lebanon County from Envirotech Corporation, a facility which GEESI later discovered to be contaminated with PCBs. GEESI alleges that it has thus far spent in excess of $2 million to clean up the site. These facts will be deemed to be true for the purpose of this motion.

In October of 1990, GEESI brought suit against Envirotech on three causes of action: (1) One based on the federal Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601–9675 ("CERCLA"); (2) One arising from the Pennsylvania Hazardous Sites Cleanup Act, 35 P.S. §§ 6020.101–6020.1305 ("HSCA"); and (3) One grounded in state contract law.

Envirotech's motion to dismiss attacks only the second cause of action, arguing that the HSCA does not create a right of action for private citizens, but only for the Commonwealth and other governmental entities, and thus the statute may not be used to impose liability in a suit between private parties. The court does not agree, and will deny defendant's motion.

*Discussion*

Concerned with the growing danger to the environment posed by the inadequate and indiscriminate disposal of hazardous wastes in the Commonwealth, the Pennsylvania General Assembly in 1988 crafted remedial legislation in order to add teeth to an existing scheme of laws which had been essentially regulatory in nature.[1] As the General Assembly declared in outlining the policy behind the statute:

> Traditional legal remedies have not proved adequate for preventing the release of hazardous substances into the environment or for preventing the contamination of water supplies. It is necessary, therefore, to clarify the responsibility of persons who own, possess, control or dispose of hazardous substances;

to provide new remedies to protect the citizens of this Commonwealth against the release of hazardous substances; and to assure the replacement of water supplies.

35 Pa.Stat.Ann. § 6020.102(5) (Purdon Supp.1990). The legislature also provided:

> Extraordinary enforcement remedies and procedures are necessary and appropriate to encourage responsible persons to clean up hazardous sites and to deter persons in possession of hazardous substances from careless or haphazard management.

*Id.* at § 6020.102(9).

In considering whether the HSCA provides private parties with a right of action, the court notes that generally a statute such as the HSCA should be interpreted liberally to allow the full effect of its remedial purpose to be realized. *See generally, Chappell v. Pennsylvania Pub. Util. Comm'n,* 57 Pa.Commw. 17, 425 A.2d 873, 876 (1981); *Commonwealth, Human Relations Comm'n v. Transit Cas. Ins. Co.,* 478 Pa. 430, 387 A.2d 58, 62–63 (1978).

I. The Language of the HSCA

Plaintiff and the DER argue that sections 1101 and 702 of the HSCA, taken together, create a private cause of action for the recovery of the costs of cleaning a hazardous waste site. Section 1101 creates the remedy, while § 702 defines the scope of liability. Section 1101 reads:

> A release of a hazardous substance or a violation of any provision, regulation, order or response approved by the Department under this act shall constitute a public nuisance. Any person allowing such a release or committing such a violation shall be liable for the response costs caused by the release or the violation. The board and any court of competent jurisdiction is hereby given jurisdiction over actions to recover response costs.

---

1. To a great extent, the HSCA was modelled after CERCLA in purpose and scope. The court will, in this memorandum, rely in some degree on interpretations of CERCLA as guidance for interpreting the HSCA. *See infra* at 117, 118–20.

35 Pa.Stat.Ann. § 6020.1101 (Purdon Supp. 1990). This section does not designate any particular party—the DER or subsequent innocent landowners, for instance—as being empowered to bring an action under its auspices or as the party to whom a violator is liable. *See Lutz v. Chromatex, Inc.*, 725 F.Supp. 258, 265–266 (M.D.Pa.1989) ("Unlike Section 507, Section 1101 is not limited to suits by the Department ... Thus, the Act contains no generally applicable prohibition against private actions for response costs under Section 1101....") (citation omitted). The court finds persuasive the argument that the General Assembly, had it desired to limit the scope of this remedial section to DER actions only, would have inserted language to that effect, as it had in numerous other sections in the statute.[2] This court is hesitant to read a limitation into a statutory section where the legislature could have inserted such language but did not. *See Southeastern Pa. Transp. Auth. v. Weiner*, 56 Pa.Commw. 104, 426 A.2d 191, 194 (1981); *Key Savings and Loan Assoc. v. Louis John, Inc.*, 379 Pa. Super. 226, 549 A.2d 988, 992 (1988), *app. denied*, 523 Pa. 632, 564 A.2d 1260 (1989), *app. granted*, 524 Pa. 597, 568 A.2d 1248 (1989).

If § 1101 is the tip of the HSCA spear, § 702 determines the statute's targets. In defining the scope of liability under the statute, § 702 states:

(a) General rule: A person who is responsible for a release or a threatened release of a hazardous substance from a site as specified in Section 701 is strictly liable for the following response costs and damages which result from the release or threatened release or to which the release or threatened release significantly contributes:

(1) Costs of interim response which are reasonable in light of the information available to the Department at the

time the interim response action was taken.

(2) Reasonable and necessary or appropriate costs remedial response incurred by the United States, the Commonwealth or a political subdivision.

(3) Other reasonable and necessary or appropriate costs of response incurred by any other person.

(4) Damages for injury to, destruction of, or loss of natural resources within this Commonwealth or belonging to, managed by, controlled by or appertaining to the United States, the Commonwealth or a political subdivision. This paragraph includes the reasonable costs of assessing injury, destruction or loss resulting from such a release.

(5) The cost of a health assessment or health effects study.

35 Pa.Stat.Ann. § 6020.702(a) (Purdon Supp.1990).

The court believes that § 702(a) through its very language was intended by the legislature to encompass polluter liability to private parties. Subsections 702(a)(1) through (a)(3) discuss an increasingly wide range of parties to whom a polluter may be liable. Section 702(a)(1) allows for recovery by the DER of response costs which are reasonable in light of its knowledge at the time of the response action. Section 702(a)(2) permits redress for costs incurred by the federal government, the Commonwealth, and the governments of the various political subdivisions within the Commonwealth. Then, § 702(a)(3) empowers *"any other person"* to recover reasonable and necessary cleanup costs. Section 103 of the HSCA, the statute's definitional section, defines a "person" as:

An individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, authority, interstate body or other legal entity which is recognized by law as the subject of rights and duties. The term includes the

---

**2.** *See, e.g.,* § 1102(c): "application may be made by the Department to the Commonwealth Court" in order to get a contempt order for non-compliance with an enforcement order, 35 Pa.Stat.Ann. § 6020.1102(c) (Purdon Supp.); § 1103(a): "the Department may institute a suit

in equity ... the court shall, upon motion of the Commonwealth, issue a[n] ... injunction" to restrain a party from violating the act, *id.* at § 6020.1103(a); § 1104: "the Department may assess a civil penalty upon a person for the violation....", *id.* at § 6020.1104(a).

Federal Government, state governments and political subdivisions.

35 Pa.Stat.Ann. § 6020.103 (Purdon Supp. 1990). Obviously, the scope of the term "person" within the meaning of the statute encompasses more than governmental bodies. If, as defendant urges, subsection (a)(3) were read as establishing liability only to government entities, then (a)(3) would merely be a restatement of the liabilities established by the previous two sections. This is an incongruous result and cuts against the plain meaning of the words as defined by the statute. *See Commonwealth v. Lobiondo*, 501 Pa. 599, 462 A.2d 662, 664 (1983) (construction of statutory provision which renders it meaningless not favored in Commonwealth); 1 Pa. Cons. Stat.Ann. § 1922(2) (Purdon Supp.1990) ("the General Assembly intends the entire statute to be effective and certain."); *id.* at § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions.").[3]

Defendant argues that this interpretation of § 702(a) is undercut by the legislative history of the HSCA. The original draft of the HSCA, House Bill 1852, was passed by the Pennsylvania House of Representatives on June 7, 1988. It contained a provision, § 509, which provided a broad cause of action for private parties against polluters:

> Any persons responsible for a release of a hazardous substance under this act shall also be strictly liable for any personal injury or property damage resulting from the release or for any response costs incurred which are not inconsistent with a departmental action pursuant to Section 505.

H.B. 1852, Printer's No. 3428 at 41–42, 37 House Legislative Journal at 991–1039. However, after passing the house, this section was later deleted by the Senate Environmental Resources and Energy Committee, although § 507, which similarly empowered government agencies, was retained. H.B. 1852, Printer's No. 3558. Defendant takes pains to point out that this

provision includes, along with terms creating liability for personal injury and property damage, language which imposes strict liability for response costs—just as § 702(a) does. This amendment was approved by the Joint Conference Committee, (Printer's No. 3809), *see* 51 Senate Legislative Journal 2552 (July 5, 1988); Report of the Committee of Conference on H.B. 1852, Printer's No. 3809, and adopted by both houses. *See* House and Senate Legislative Journals for October 18, 1988. In that form, the bill was signed into law.

■ Therefore, defendant concludes, as the legislature deliberately omitted a provision authorizing private party suits, it obviously did not intend to invest such power in § 702. The court is not prepared to make such a sweeping conclusion. In deleting the provision in § 509 granting private parties the right to recover response costs along with provisions authorizing suit for personal injury and property damages, the legislature may well have been excising language which was redundant of the liability-imposing language of § 702(a)(3). Certainly, the language of § 702(a)(3) suggests the creation of a right to recover response costs in private citizens. A similar right of action left alone in § 509 would simply be restating a right already granted under § 702(a)(3). The deletion of a statutory provision, under Pennsylvania law, does not necessitate the wholesale elimination of the subject of that provision from the statute. *See Pennsylvania Retailers' Assocs. v. Lazin*, 57 Pa.Commw. 232, 426 A.2d 712, 715–16, 718 (1981) (in a situation where a federal statute was the model for a state counterpart, deletion of one provision did not permit court to ignore express language of other sections of the statute).

In addition, the legislative history of CERCLA evidences that a similar deletion of a private party empowerment section did not deter courts from interpreting the statute as authorizing a private party action for cost recovery. In *Artesian Water Co.*

---

**3.** The court also notes that § 702(a)(5) authorizes recovery for costs incurred for health assessment or health effects studies, and that the

recovery of these costs too are not restricted to the government.

*v. Government of New Castle County*, 659 F.Supp. 1269, 1285–86 (D.Del.1987), *aff'd*, 851 F.2d 643 (3d Cir.1988), a district court in Delaware noted that, "[a]s reported from the committee, the leading Senate Superfund bill, S. 1480, provided a private cause of action for all damages for economic loss or loss due to personal injury.... The version of S. 1480 debated on the Senate floor, however, was a substitute bill that differed markedly.... [Plaintiff's] claims for cost recovery must therefore be viewed in light of the fundamental, if elusive, distinction between response costs and economic losses." Similarly, a court in the Eastern District of Pennsylvania stated with regard to CERCLA in *City of Philadelphia v. Stepan Chem. Co.*, 544 F.Supp. 1135, 1142 (E.D.Pa.1982) that "[w]hat was enacted and signed into law is a severely diminished piece of compromise legislation from which a number of significant features were deleted...." This included, according to a footnote, a "federal cause of action for medial expenses and property damage...." *Id.* at 1142 n. 9. However, the court also remarked that "it is clear from the discussions which preceded the passage of CERCLA that the statute is designed to achieve one key objective—to facilitate the prompt cleanup of hazardous dump sites ...," and that private recovery action were a significant means to vindicate that purpose. *Id.* at 1143.

Given both the clear language of § 702(a) and the parallel history of CERCLA, the court does not find the legislature's deletion of § 509 indicative of an intent to erase any trace of a private party right to sue in the HSCA.

Defendant also contends that HSCA's declaration of policy militates against reading into the statute any private cause of action. Defendant cites § 102(12)(ii) which states: .

> (12) The following are the purposes of this act: :...
>
> (ii) Establish independent authority for the department ... to take other appropriate response actions and recover from responsible persons its costs for conducting the responses.

35 Pa.Stat.Ann. § 6020.102(12)(ii) (Purdon Supp.1990). It is true that private parties and the creation of a private right of action are not singled out in the declaration of policy while the DER is. This is not determinative or even particularly convincing, however, as other important provisions of the HSCA are likewise not mentioned specifically in the policy section. For instance, in §§ 304–308, the legislature provided for a scheme of training for municipal officials, along with other guarantees, and created a fund to provide municipalities hosting hazardous waste sites with financial assistance to ensure the safety of the sites. At no place in the declaration of policy are these lengthy sections discussed.

In fact, the concept of a private right of action for the recovery of response costs fits cleanly within the broad purposes outlined by the General Assembly elsewhere in § 102:

> Traditional legal remedies have not proved adequate for preventing the release of hazardous substances into the environment or for preventing the contamination of water supplies.... It is therefore necessary to provide new remedies to protect the citizens of the Commonwealth against the release of hazardous substances....

35 Pa.Stat.Ann. § 6020.102(5) (Purdon Supp.1990). "Extraordinary enforcement remedies and procedures are necessary and appropriate...." *Id.* at § 6020.102(9); *see supra* at 115. The point of the enactment of the HSCA was to arm the Commonwealth and its citizens with a legal sledgehammer to bring violators of hazardous waste regulations to justice, to award remuneration for cleanup costs incurred, and to deter other potential violators. The absence of private party suits from specific mention in the declaration of policy does not mean that this valuable enforcement tool was to be excluded, but rather that they were encompassed within the broad directives of the act.

## II. Comparison to CERCLA

■ The court is also swayed by the similarity of the HSCA to its federal counterpart CERCLA, 42 U.S.C. §§ 9601–9675,

which has universally been interpreted as providing a private right of action for the recovery of response costs. As a departure point, the court notes that under Pennsylvania law it may consider the interpretation of similar statutes in order to interpret a Pennsylvania statute. *See* 1 Pa. Cons. Stat.Ann. § 1921(c)(5) (Purdon Supp.1990); *Commonwealth, Dep't of Transp. v. Von Altimus,* 49 Pa.Commw. 245, 410 A.2d 1303, 1305 (1980).

■ Portions of the HSCA were apparently modeled after CERCLA. As with the federal statute, the HSCA establishes a fund for the cleanup of hazardous waste sites, *compare* HSCA § 901, 35 Pa.Stat. Ann. § 6020.901 (Purdon Supp.1990) and CERCLA § 111, 42 U.S.C. § 9611, empowers governmental authorities to investigate those sites and impose the necessary remedies, *compare* HSCA § 501, 35 Pa.Stat. Ann. § 6020.501 (Purdon Supp.1990) with CERCLA § 104, 42 U.S.C. § 9604, and sets up standards for the cleanup of the toxic sites, *compare* HSCA § 504, 35 Pa.Stat. Ann. § 6020.504 (Purdon Supp.1990) with CERCLA § 121, 42 U.S.C. § 9621. Further, under both statutes, the agencies are empowered to demand cleanup of hazardous waste sites without judicial review, and any eventual review by the courts is not *de novo* but based on the study of an "administrative record," *compare* HSCA § 508(c), 35 Pa.Stat.Ann. § 6020.508(c) (Purdon Supp.1990) with CERCLA § 113(j), 42 U.S.C. § 9613(j), violators are identified under broad terms, *compare* HSCA §§ 702 and 705, 35 Pa.Stat.Ann. §§ 6020.702 and .705 (Purdon Supp.1990) with CERCLA §§ 107 and 113(f), 42 U.S.C. §§ 9607 and 9613(f), defenses for violators are narrowly circumscribed, *compare* HSCA § 703, 35 Pa.Stat.Ann. § 6020.703 (Purdon Supp. 1990) with CERCLA § 107(b), 42 U.S.C. § 9607(b), and special settlement mechanisms are put in place to encourage cooperation by potential responsible parties, *compare* HSCA §§ 705-07, 35 Pa.Stat.Ann. § 6020.705-07 (Purdon Supp.1990) with CERCLA § 122, 42 U.S.C. § 9622. In addition, the HSCA makes numerous references to CERCLA. *See, e.g.,* HSCA §§ 102(7)-

(8), (12), 103, 301(2), (6), (7), (14), 502(a)(1), (e)(2), 504(a) and (b), and 705(d).

Importantly, the section of CERCLA which has been interpreted as providing an individual right of action proffers language nearly identical to that in § 702(a)(4) of the HSCA. CERCLA § 107 provides that responsible parties:

shall be liable for

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; ....

42 U.S.C. § 9607(a)(4).

Like § 702(a)(3), CERCLA § 107(a)(4)(B) does not specifically provide for a private right of action to recover response costs. Nevertheless, numerous courts have interpreted the CERCLA section as creating just that. *Chemical Waste Management, Inc. v. Armstrong World Indus.,* 669 F.Supp. 1285 (E.D.Pa.1987); *Artesian Water Co. v. Government of New Castle County,* 605 F.Supp. 1348, 1355–56 (D.Del. 1985) (rejecting arguments that previous deletion of private cause of action sections for tort and property damages also abrogated action for response costs); *City of Philadelphia v. Stepan Chem. Co.,* 544 F.Supp. 1135, 1142–43 (E.D.Pa.1982) ("The liability provision is an integral part of the statute's method of achieving this [remedial] goal for it gives a private party the right to recover its response costs...."). *See also Walls v. Waste Resource Corp.,* 761 F.2d 311, 318 (6th Cir.1985) (emphasizing the importance of private party cleanups, the court noted that "[a]llowing a private action to recover response costs from responsible parties under [§ 107] is thus consistent with the language of [§ 107] and with the congressional purpose underlying CERCLA as a whole.").

The court is not persuaded by the argument made by counsel for defendant at oral argument that the language in § 107(a)(4)(B) stating that actions must be

brought pursuant to the National Contingency Plan makes the CERCLA section distinguishable from the HSCA section. Defendant asserts that the National Contingency Plan, found at 40 C.F.R. § 300, outlines standards for the response to and clean up of hazardous waste releases which parties are required to perform before being authorized to bring suit, standards which are not present in the HSCA. The court finds that the standards which are present in the § 702(a)(3) of the act—that the response costs be "reasonable and necessary or appropriate"—is enough of a guide to courts to determine if the granting of response costs is wise.

The court finds it highly persuasive that the federal statute, with very similar wording to the HSCA, has been consistently interpreted in this circuit and others as authorizing private parties to sue violators of the act for cleanup costs.

Moreover, the court presumes that the Pennsylvania General Assembly understood the state of the law governing hazardous waste regulation and remedies when it enacted the HSCA, including that the CERCLA liability provision § 107(a)(4)(B), on which it had patterned the HSCA § 702(a)(3), was time and again being interpreted as providing a right of action to private persons. The court finds it telling that the legislature, armed with this knowledge, did not specifically prohibit private party actions in § 702 or any other section of the HSCA if that was the effect it desired.

### III. Weight Given to the Interpretation of the DER

■ Finally, the court is inclined to give a quantity of credence to the position of Pennsylvania Department of Environmental Resources, the agency charged with administering the regulations and remedies under the HSCA, which has weighed in heavily in favor of permitting private ac-

tions under the act. *See Spicer v. Commonwealth, Dep't of Pub. Welfare*, 58 Pa. Commw. 558, 428 A.2d 1008, 1009 (1981); *Dear v. Holly Jon Equip. Co.*, 283 Pa.Super. 74, 423 A.2d 721, 725 (1980) (court should give deference in interpretation to the governmental agency empowered to administer a law). Here, the DER has outlined a number of arguments in favor of finding that the HSCA creates a private cause of action. In addition, the department has stated categorically in its *amicus* brief and at oral argument that private party suits under the HSCA will greatly enhance the effectiveness of its efforts to clean up hazardous waste sites throughout the Commonwealth.

### IV. Effect of *Lutz v. Chromatex*

In arguing that no private cause of action exists under the HSCA, defendant relies heavily on a case decided by Judge Nealon of this district, *Lutz v. Chromatex, Inc.*, 730 F.Supp. 1328 (M.D.Pa.1990) (*Chromatex II*).[4] In *Chromatex II*, Judge Nealon explicitly found that the HSCA provided no cause of action to parties other than governmental entities, and dismissed plaintiff's HSCA claim. This court respectfully disagrees with Judge Nealon's analysis, and opts not to follow his decision.

The *Chromatex II* court placed a great deal of emphasis on a comparison of the HSCA with the Pennsylvania Solid Waste Management Act, 35 Pa.Stat.Ann. §§ 6018.101–6018.1003 (Purdon Supp.1990) ("SWMA"). The court found the "Enforcement and Remedies" sections of the two statutes to be alike in "language and structure," and pointed out that in other corresponding sections of the two acts the "person" responsible for enforcing the substantive provisions was the DER. 730 F.Supp. at 1332. The interests of private citizens, reasoned the court, were provided for in both statutes by permitting them the right to intervene in actions brought by the

---

**4.** Apparently there have been three published decisions in the *Lutz v. Chromatex, Inc.* matter as of this date: one at 718 F.Supp. 413 (M.D.Pa. 1989) (motion to dismiss regarding CERCLA and state common law claims), one at 725 F.Supp. 258 (M.D.Pa.1989) (motion for leave to file amended complaint adding HSCA count), and the decision cited above. The parties to this case have taken to calling the decision at 730 F.Supp. 1328 "*Chromatex II*," and the court will thus refer to that decision similarly to avoid confusion.

government. *Id.* Private party actions under the SWMA, the court noted, were specifically disapproved of by the Pennsylvania Superior Court in *Fleck v. Timmons,* 374 Pa.Super. 417, 543 A.2d 148 (1988).

■ This court, however, agrees with plaintiff and the DER that the SWMA and the HSCA are fundamentally different in purpose and effect, and thus the absence of a private right of action in the former should not control whether a court should find such a right of action in the latter. The SWMA and the HSCA envision two wholly separate and distinct schemes attacking different problems. This necessitates divergent remedies.

The SWMA is aimed at regulating the disposal and maintenance of solid waste. A host of regulations found at 25 Pa.Code §§ 260.1 *et seq.* enacted pursuant to the SWMA set out the requirements for operation of hazardous waste disposal facilities which are monitored and controlled by facets of the DER. Given the heavy emphasis of government in a watchdog role under the SWMA along with the regulatory nature of its provisions and regulations, it is natural that the rights and responsibilities for enforcing these provisions lay with the government and not individuals.

In contrast, the HSCA was enacted specifically for remedial purposes—to create new remedies to address the growing problem of contamination through the dumping of hazardous waste, problems which were not being controlled by the SWMA. *See supra* at 115. Indeed, to a large extent, the HSCA does not apply to sites affected by the SWMA. Section 1301(a) of the act states that "an identified and responsible *owner or operator of a site with a release* or threatened release of a hazardous substance or a contaminant, shall not be subject to enforcement orders or the cost recovery provisions of this act, until the department has instituted administrative or judicial enforcement action against the owner or operator under other applicable environmental laws...." 35 Pa. Cons. Stat.Ann. § 6020.1301(a) (Purdon Supp. 1990). This section shows the use of the HSCA as a "gap filler" for other environ-mental laws—the department cannot apply many of the HSCA's enforcement remedies until the DER first pursues relief under other laws, such as the SWMA. The HSCA is a complement to, not a mirror image of, the SWMA, invested with a separate purpose and separate remedies. Therefore, the court is not persuaded that the lack of a private cause of action in the SWMA is decisive of whether private parties can sue under the HSCA, and thus the court declines to follow *Chromatex II.*