**ANTRIM MINING, INCORPORATED,**
**Plaintiff,**

v.

**Arthur A. DAVIS, Secretary, Pennsylvania Department of Environmental Resources; et al., Defendants.**

**No. 1:CV–91–0786.**

United States District Court,
M.D. Pennsylvania.

Sept. 10, 1991.

Stephen G. Allen, Buchanan Ingersoll, P.C., Philadelphia, Pa., for plaintiff.

Kurt J. Weist and Carl B. Schultz, Harrisburg, Pa., for defendants.

## ORDER

MUIR, District Judge.

### Introduction

On June 14, 1991, Plaintiff Antrim Mining, Inc. (Antrim) filed a complaint against Defendants Arthur A. Davis, Secretary, Pennsylvania Department of Environmental Resources; the Pennsylvania Department of Environmental Resources; and "all other persons known or unknown acting for or on behalf of the named Defendants in their official capacity." On June 26, 1991, Antrim filed an amended complaint. Antrim seeks declaratory and injunctive relief to enjoin Defendants from enforcing two compliance orders issued No-

vember 16, 1990, and June 18, 1991 pursuant to the Pennsylvania Clean Streams Law, 35 P.S. §§ 691.1, *et seq.* The compliance orders require Antrim to treat and abate acid mine discharge flowing from an inactive underground mine complex underlying Antrim's surface mining operations. Antrim alleges that Defendants are barred from enforcing the compliance orders because Antrim previously was sued for the same alleged violations of the Clean Streams Law by the Pennsylvania Environmental Defense Foundation (the Foundation), a private environmental organization, and that that litigation was resolved by consent decree approved January 12, 1990. *Pennsylvania Environmental Defense Foundation v. Antrim Mining, Inc.,* No. 89–0434 (M.D.Pa. Jan. 12, 1990). Antrim argues that Defendants who were not parties to the suit are barred from enforcing the compliance orders by the terms of the consent decree and by the doctrine of res judicata. Antrim also asserts pendent state claims contesting its liability under the Clean Streams Law. On July 8, 1991, Defendants filed a motion to dismiss the complaint. On July 9, 1991, Antrim filed a motion for a preliminary injunction. Both motions are ripe for disposition.

Antrim conducts surface coal mining operations in Duncan Township, Tioga County, Pennsylvania. A large inactive underground mine complex lies beneath a portion of Antrim's surface mining operations. The underground mine complex was operated in the late 1800s and early 1900s by mining companies other than Antrim. This matter concerns polluted water which flows out of the underground mine complex and into the Babb's Creek watershed. On December 2, 1988, the Foundation served notice of a citizens' suit against Antrim pursuant to the citizens' suit provisions of the Federal Clean Water Act, 33 U.S.C. § 1365(b)(1)(A), and the Pennsylvania Clean Streams Law, 35 P.S. § 691.-601(e). Neither the United States nor Defendants initiated legal proceedings and on April 26, 1989, the Foundation filed a complaint against Antrim alleging that Antrim illegally discharged polluted effluent from its surface mining operations into the underground mine complex from whence it flowed into the Babb's Creek watershed.

Antrim asserts in its amended complaint that the parties wished "to avoid the expense, delay and uncertainty of a trial of complex and disputed issues" and therefore settled the matter by way of a consent decree. Amended Complaint, ¶ 15. A proposed consent decree was served on the United States Department of Justice, the Administrator of the Environmental Protection Agency, and Defendants. Following negotiations with the Department of Justice, a modified consent decree was submitted to this Court and approved on January 12, 1990. The modified consent decree required Antrim to pay a civil penalty of $10,000.00 to the United States Treasury; provided for the creation of the Babb's Creek Watershed Pollution Abatement Fund; and required Antrim to commence reclamation of its surface mining operations, complete backfilling of areas overlying the underground mine complex, cease coal extraction on those areas, and monitor periodically the effluent flowing from the underground mine complex. Paragraph 4 of the modified consent decree provided in relevant part that:

> ... this Consent Decree constitutes a full and complete adjudication and settlement, including attorneys fees and expert fees, of the claims which were alleged or the civil claims which could have been alleged in this case and binds all parties or potential parties who had notice of the instant claims and this Consent Decree.

*Pennsylvania Environmental Defense Foundation,* No. 89–0434, slip. op. at 7 (M.D.Pa. Jan. 12, 1990). This Court retained jurisdiction over the matter to facilitate the implementation and enforcement of the decree. *Id.,* slip op. at 2 (M.D.Pa. Sept. 19, 1990). Antrim claims that enforcement of the compliance orders will threaten its solvency and will prevent full compliance by Antrim with the terms of the modified consent decree.

### Discussion

Antrim asserts in its amended complaint and its motion for a preliminary injunction

that although Defendants were not parties to the prior litigation, they are bound by the terms and conditions of the modified consent decree and therefore may not take action against Antrim for the same alleged violations of the Clean Streams Law. Because we conclude that Antrim's complaint fails as a matter of law, we will dismiss the complaint and need not address Antrim's arguments in support of its motion for a preliminary injunction.

In construing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the complaint must be liberally construed and viewed in the light most favorable to the Plaintiff. *Gomez v. Toledo*, 446 U.S. 635, 636 n. 3, 100 S.Ct. 1920, 1921 n. 3, 64 L.Ed.2d 572 (1980). The factual allegations contained in the complaint and every inference deducible therefrom must be accepted as true for the purposes of the motion. *United States v. Mississippi*, 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965). The Court must determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Colburn v. Upper Darby Township*, 838 F.2d 663, 665–66 (3d Cir.1988), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989). We should not dismiss Antrim's complaint at the pleading stage unless it appears beyond doubt that Antrim can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In light of these principles we will now address Defendants' motion to dismiss the complaint.

■ Antrim first asserts that Defendants are precluded from enforcing the compliance orders because the provision at ¶ 4 of the modified consent decree forecloses all future claims which could have been alleged and binds all persons who had notice of the claims and of the consent decree. Antrim argues that Defendants should have intervened and participated in the suit and should be bound by the modified consent decree. In *Martin v. Wilks*, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989), a case determining the scope of a consent decree, the Supreme Court re-affirmed the general rule that persons are not bound by a judgment unless they are parties to the litigation. The Court emphasized the principle that "everyone should have his own day in court." *Wilks*, 109 S.Ct. at 2184 (citing 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure, § 4449, p. 417 (1981) (18 Wright)). The Court held that in order for a person to be bound by a judgment he must be joined under Fed.R.Civ.P. 19, or intervene under Fed.R.Civ.P. 24. The fact that a person had an opportunity to intervene but chose not to do so is irrelevant. *Id.* at 2186. The burden lies on existing parties to bring into the litigation additional non-intervening parties. *Id.*

Antrim argues that *Wilks* is inapplicable here because the Court did not address the case where a consent decree contains a provision explicitly purporting to bind all potential parties. In our view, the law is clear that consent decrees can bind only parties, *Id.* at 2188, and, moreover, can bind only those parties who have agreed to the consent decree. *See Firefighters v. Cleveland*, 478 U.S. 501, 529, 106 S.Ct. 3063, 3079, 92 L.Ed.2d 405 (1986). The holding in *Wilks* was based on the requirements of the Federal Rules of Civil Procedure. *Wilks*, 109 S.Ct. at 2185. Because the Court held that parties may not bind non-parties by entering consent decrees, it follows that parties may not restrict the legal rights of non-parties by including in a consent decree provisions purporting to bind them. Antrim possessed no power to alter the rule set forth in *Wilks* merely by including language in the consent decree purporting to bind non-parties and Defendants are not bound by ¶ 4 of the modified consent decree.

### Claim Preclusion

The Court in *Wilks* recognized that in some "limited circumstances," a non-party may be bound by a judgment if his interests are "adequately represented by someone with the same interests who is a party." *Id.* at 2184, n. 2 (citations omitted). Defendants do not appear to dispute Antrim's claim that the alleged violations of the Clean Streams Law cited in the compli-

ance orders are based on the same facts and law which formed the basis for the prior suit brought by the Foundation. Antrim argues that even if Defendants are not bound by ¶ 4 of the consent decree, Defendants are precluded from enforcing the compliance orders because the Foundation adequately represented Defendants in the first suit and possessed the same interests as Defendants.

■■■ The *Wilks* exception relating to "adequate representation" appears to mirror the res judicata doctrine of "virtual representation." *See Mann v. City of Albany*, 883 F.2d 999, 1003 (11th Cir.1989) (comparing *Wilks* exception to doctrine of virtual representation). The principle of virtual representation expands res judicata by broadening the concept of privity between parties to successive actions. In *United States v. ITT Rayonier, Inc.*, 627 F.2d 996 (9th Cir.1980), the court explained that a non-party may be barred by res judicata if a party in the first suit "is so closely aligned with its interests as to be its 'virtual representative.'" *Id.* at 1003 (citations omitted). The doctrine of virtual representation, in turn, "closely resembles the common law theory of concurrent privity." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 972–74 (5th Cir.1986). "[Privity] designates ... a person so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved.... Or ... the term is sufficiently inclusive 'under the federal law of res judicata [that] a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative.'" *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 688 n. 9 (7th Cir.1986) (citations omitted).

The court in *Rayonier* stated:

In some contexts, the relationship between governmental authorities as public enforcers of ordinances and private parties suing for enforcement as private attorneys general is close enough to preclude relitigation. *Southwest Airlines Co. v. Texas International Airlines,*

*Inc.*, 546 F.2d 84, 98 (5th Cir.1977), *cert. denied* 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977).

627 F.2d at 1003. In *Rayonier*, the court held that the Federal Environmental Protection Agency was barred from relitigating issues already decided in a case in which it was not a party because the Agency was in privity with a state environmental protection agency which was a arty. *Id.* The Court of Appeals for the Third Circuit has held that for the doctrine to apply the party in the first suit must have had some obligation to safeguard the interests of the party in the second suit. *Moldovan v. Great Atlantic & Pacific Tea Co.*, 790 F.2d 894 (3d Cir.1986). *See also, Alpert's Newspaper Delivery v. New York Times*, 876 F.2d 266, 270 (2d Cir.1989) (requiring "authority of representation" to establish privity); *Pollard v. Cockrell*, 578 F.2d 1002, 1008–09 (5th Cir.1978) (requiring relationship between parties establishing legal accountability). Whether a party was the virtual representative of another ordinarily is a question of fact. *Aerojet–General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir.), *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). However, "privity is a legal determination for the trial court as to whether the relationship between the parties is sufficiently close to support preclusion." *Phillips v. Kidder, Peabody & Co.*, 750 F.Supp. 603, 607 (S.D.N.Y.1990).

■■■ We must first decide whether Defendants and the Foundation could have shared the same interests. Defendants argue that the Foundation could not have shared their interests because the Commonwealth's interest in representing the entire population of the state necessarily is broader than the interests of a small group of citizens. The citizens' suit provision of the Clean Streams Law authorizes private persons to sue only to abate nuisances and to compel compliance with the act. Private persons may not sue for civil penalties. *City of Philadelphia v. Stepan Chem. Co.*, 544 F.Supp. 1135, 1150–51 (E.D.Pa.1982). The statute provides that a private citizen may commence a suit "on his *own* behalf." 35 P.S. 691.601(c) (emphasis added). Al-

though Defendants argue that this language indicates that citizens' suits are not brought on behalf of the public, we note that the citizens' suit provision of the Federal Clean Water Act contains identical language. This Court has noted previously that private parties suing under the citizens' suit provisions of the Clean Water Act act as private attorneys general to "protect and advance the public's interest" rather than to promote private interests. *Pennsylvania Environmental Defense Foundation v. Bellefonte Borough,* 718 F.Supp. 431, 434 (M.D.Pa.1989); *see also, Middlesex County Sewerage Auth. v. National Sea Clammers Assoc.,* 453 U.S. 1, 17 n. 27, 101 S.Ct. 2615, 2625 n. 27, 69 L.Ed.2d 435 (1981). We conclude that, as a matter of law, the Foundation and Defendants may have shared the same interests.

In *Southwest Airlines Co. v. Texas Int'l Airlines, Inc.,* 546 F.2d 84 (5th Cir.), *cert. denied,* 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977), the court held that the federal Government by nature adequately represents private rights and interests and thus precludes relitigation by private citizens unless some distinct individual cause of action existed which the Government was not capable of representing. *Id.* at 98. In neither *Rayonier* nor *Southwest Airlines* was the Government precluded from relitigating a claim previously litigated by private interests. Similarly, in *Kerr–McGee Chem. Corp. v. Hartigan,* 816 F.2d 1177 (7th Cir.1987), the court distinguished between prior litigation brought by the Government and prior private litigation. The court noted that individual litigation generally "does not preclude relitigation by the government." *Hartigan,* 816 F.2d at 1180. *Citing* 18 Wright, § 4458, at 520. *See also, Hathorn v. Lovorn,* 457 U.S. 255, 268 n. 23, 102 S.Ct. 2421, 2430 n. 23, 72 L.Ed.2d 824 (1982) (United States not bound in Voting Rights Act case); *Donovan v. Cunningham,* 716 F.2d 1455, 1462 (5th Cir.1983), *cert. denied,* 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984) (Government not bound in ERISA case); *EEOC v. Kimberly–Clark Corp.,* 511 F.2d 1352, 1361 (6th Cir.), *cert. denied,* 423 U.S.

994, 96 S.Ct. 420, 46 L.Ed.2d 368 (1975) (Government not bound in Title VII case).

Private litigation may be precluded by prior public action because governments are "representative of the cumulative rights of private citizens." *Hartigan,* 816 F.2d at 1180–81 n. 4. *Citing* 18 Wright § 4458, at 521. The court in *Hartigan,* quoting *United States v. East Baton Rouge Parish School Bd.,* 594 F.2d 56, 58 n. 6 (5th Cir.1979), characterized the view that private individuals may adequately represent the Government interest as a "daring analytical leap." *Hartigan,* 816 F.2d 1177, 1180–81 n. 4. In the case at bar Antrim has not alleged that the Foundation was in any way legally accountable to these governmental defendants. Antrim has cited no cases holding the Government bound by a prior suit litigated by a private citizen. Courts applying the doctrine of virtual representation have not held the Government and private citizens to be in privity. To do so here would, in our view, require an undue expansion of the existing preclusion doctrine. We conclude that, as a matter of law, the Foundation was not the virtual representative of Defendants.

Antrim seeks to distinguish cases such as *Fitzsimmons, Donovan, Hathorn,* and *Kimberly–Clark* by pointing out that the private litigants in those cases, unlike the Foundation, sought to vindicate their own pecuniary interests.

■ Antrim correctly argues that the private litigants in those cases did not represent the public interest as the Foundation may have attempted to do here. However, Antrim acknowledges that no remedy for a personal pecuniary interest exists under the Federal Clean Water Act. Private persons may sue for civil penalties under that statute but all damages are payable to the United States Treasury. *Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.,* 913 F.2d 64, 82 (3d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). Although private suits under the Clean Water Act represent the public interest, the Government is not precluded from subsequently filing suit. *Sierra Club v.*

*Electronic Controls Design,* 909 F.2d 1350, 1356 n. 8 (9th Cir.1990). We therefore conclude that the distinction drawn by Antrim is not dispositive.

In *Fitzsimmons,* a case involving prior private litigation under the ERISA statute, the Court expressed concern that holding the Secretary of Labor barred by the doctrine of res judicata would require the Secretary to intervene in "each and every piece of litigation or forever be barred." *Id.,* 805 F.2d at 691. The Court also observed that barring the Government from bringing suit would disadvantage ERISA beneficiaries in general because they otherwise would be bound by any mishandling of cases by prior private litigants. *Id.* Similar concerns have been raised concerning the Federal Clean Water Act. Commenting on the 1987 Amendments to the Act, Senator Chafee noted that the rule permitting government relitigation of previously litigated private claims need not be stated explicitly in the statute because it would merely restate the current law on preclusion. The Senator stated that the rule is necessary to protect the public from "abusive, collusive, or inadequate settlements" and to "maintain the ability of the Government to set its own enforcement priorities." 133 Cong.Rec. S737 1264, (daily ed. Jan. 14, 1987) (statement of Sen. Chafee). Federal courts uniformly have held that, as a matter of law, the United States is not bound by prior private litigation under the Clean Water Act if it was not a party to such litigation. *See Sierra Club, Inc. v. Electronic Controls Design,* 909 F.2d 1350, 1356 n. 8 (9th Cir.1990); *NRDC v. Interstate Paper Corp.,* 29 Env't Rep. Cas. (BNA), 1135, 1136, 1988 WL 156749 (S.D.Ga.1988); *United States v. Atlas Powder Co.,* 26 Env't Rep. Cas. (BNA), 1391, 1392 (E.D.Pa.1987). Citizens' suits under the Clean Water Act were intended to supplement and not preclude government action. *Gwaltney of Smithfield v. Chesapeake Bay Foundation,* 484 U.S. 49, 108 S.Ct. 376, 383, 98 L.Ed.2d 306 (1987).

In our view the same concerns are relevant when considering the Pennsylvania Clean Streams Law. The legislative history concerning the 1980 amendments to the Clean Streams Law which added the citizens' suit provision is devoid of commentary and is useless in any attempt to glean the intent of the Legislature in this matter. However, we note that the citizens' suit provision at issue closely resembles the analagous provision in the federal law in structure and in content. The citizens' suit provision of the Clean Streams Law, amended in 1980, bears a substantial similarity to the corresponding provision of the Clean Water Act amended in 1972 and apparently was patterned after it. We presume that the Pennsylvania General Assembly was aware of the intended effect of the federal citizens' suit provision on subsequent government litigation. *See General Electric Environmental Services, Inc., v. Envirotech Corp.,* 763 F.Supp. 113, 120 (M.D.Pa.1991). The General Assembly clearly declined specifically to bar suits by Defendants. *See* id. *To the extent that the intent of the Legislature is discernable, it fails to support Antrim's argument.*

To permit private litigants to bind Defendants would unduly burden Defendants' ability to perform their statutory duty under the Clean Streams Law. Private parties in Clean Streams Law litigation may enter consent decrees which do not require the abatement of pollution. For example, in this case, the parties' mutual reluctance to endure the costs and uncertainty of litigation led to the entry of the consent decree. Amended Complaint, ¶ 15. Allowing such litigation to bar subsequent enforcement efforts by Defendants could conceivably grant a polluter a license to continue to pollute and would limit Defendants' discretion to enforce the law in the public interest. As the Supreme Court observed in connection with the Clean Water Act, such a result would "change the nature of the citizens' role from interstitial to potentially intrusive. We cannot agree that Congress intended such a result." *Gwaltney,* 108 S.Ct. at 383.

Antrim attempts to distinguish the Pennsylvania Clean Streams Law from the Clean Water Act because while service of all proposed consent decrees on the

**172**

Government is required by the 1987 amendments to the Federal Clean Water Act, 33 U.S.C. § 1365(c)(3), service of proposed consent decrees on the Commonwealth is not required under the Clean Streams Law. Antrim thus argues that the federal statute provides greater protection for Government enforcement agencies then does the Clean Streams Law. Antrim further argues that the fact that the General Assembly did not provide for any explicit "reservation of rights" allowing government action after a citizens' suit has been litigated is significant. Antrim suggests that the intent of the Legislature must be interpreted to bar Defendants from enforcing the law once a citizens' suit has commenced. Under the Clean Water Act, even though the Government must be sent a copy of a proposed consent decree, it is not bound by the decree unless it is a party. The absence of such a directive in the Clean Streams Law, in our view, does not compel us to reach the conclusion that the Commonwealth therefore is bound by private litigation brought pursuant to the citizens' suit provision. Indeed, the absence of such a provision supports the opposite result. Furthermore, the absence of a provision specifically authorizing subsequent suits by Defendants does not support Antrim's argument. *See Fitzsimmons,* 805 F.2d 682, 691 (7th Cir.1986) (declining to find congressional intent to bar subsequent government action in absence of explicit directive mandating preclusion).

Finally, Defendants note that under the Clean Streams Law, each new day of noncompliance with the statute constitutes a separate offense. 35 P.S. § 691.602(d). Defendants assert that "each new day of violation gives rise to a new cause of action under the statute...." Reply Brief at 14. Defendants therefore assert that even if the modified consent decree forecloses all claims which could have been alleged by any potential party in the first suit, any violations of the Clean Streams Law which occurred after the entry of the modified consent decree are not precluded. Defendants' argument is well taken. The compliance orders which Antrim contests concern alleged ongoing violations of the Clean Streams Law and therefore could not have been encompassed by the modified consent decree.

### Conclusion

For all of the above reasons we conclude that Antrim's complaint fails as a matter of law and must be dismissed.

NOW, THEREFORE, IT IS ORDERED THAT:

1. Defendants' motion to dismiss the complaint filed July 8, 1991, is granted.

2. Antrim's amended complaint filed June 26, 1991, is dismissed.

3. Antrim's motion for a preliminary injunction filed July 9, 1991, is denied.

4. The Clerk of Court shall close the file in this case.