## D.L. Martin Machine Co. v. Loewengart and Co., Inc.

*Eugene Dice,* for plaintiff.
*Charles E. Gutshall,* for defendants.

KAYE, *J.,* September 23, 1992—D. L. Martin Machine Co. has filed an action in equity and at law against Loewengart and Co., Inc., Feuer Leather Group and Myron Feuer in which it seeks liquidated and unliquidated damages in connection with the costs of remediation which it has incurred to remove hazardous substances from a parcel of land which plaintiff purchased from defendants in 1977. The complaint alleges that defendant Loewengart has operated a leather tannery since 1946 at a manufacturing facility adjacent to plaintiff's property.[1]

Prior to 1977, when the site at issue was purchased by plaintiff from defendants, it is alleged that defendants disposed of waste materials from the tanning operation on their property including the parcel subsequently purchased by plaintiff.

Beginning in May 1990, plaintiff has been required by action of the Pennsylvania Department of Environmental Resources to investigate and remove chromium and lead contaminants from its soil. Plaintiff contends that these hazardous wastes were deposited on its land by defendants. Plaintiff alleges liquidated damages, to date, of $202,180 and contends that response costs will continue to be incurred for cleanup of the soil and monitoring of groundwater.

---

1. The complaint alleges that co-defendant Feuer Leather Group, is a holding company for Loewengart and controls the manufacturing facility located adjacent to plaintiff's property. Co-defendant Myron Feuer is the president of both Feuer Leather Group and Loewengart.

Defendants have filed a preliminary objection in the nature of a demurrer[2] to Count I of plaintiff's five-count complaint.[3] Count I of the complaint is based on plaintiff's alleged entitlement to recover its response costs from defendants pursuant to the Hazardous Sites Cleanup Act, Act of October 18, 1988, P.L. 756, 35 P.S. §§6020.101-6020.1305. The sole issue which is presented for our resolution at this time is whether or not the HSCA creates a private right of action whereby liability may be imposed in a suit between private parties.[4] Defendants contend that the HSCA permits such an action to be instituted only by the Commonwealth or other governmental entities. The issue, thus, is one strictly of statutory interpretation.

While there are no Pennsylvania appellate decisions on this point by which we are bound, the issue of the existence of a private right of action under the HSCA has been extensively explored by several U.S. District Court decisions, as well by other courts of common pleas in Pennsylvania.[5] Of particular interest, are

2. In ruling on a demurrer, the court must regard all well pleaded material facts contained in the complaint as having been admitted, as well as all inferences reasonably deducible therefrom. *Keirs v. Weber National Stores, Inc.,* 352 Pa. Super. 111, 507 A.2d 406 (1986).

3. The other four counts are for declaratory judgment, strict liability in tort, negligence and nuisance.

4. We note that section 705 of the HSCA, 35 P.S. §6020.705 permits a person to seek contribution from a responsible person under appropriate circumstances. The record before us does not permit an analysis as to whether a contribution claim could have been sought by plaintiff against defendants at any time during its remediation response. Paragraph 3 of the complaint alleges that prior to initiating a response, plaintiff "requested that the defendants conduct such response at its expense."

5. The Courts of Common Pleas of Bucks and Crawford Counties have both ruled in favor of finding a private right of action under

three cases which have been decided in U.S. District Courts for the Middle District of Pennsylvania. In the first case, decided by Judge Nealon, no private cause of action was found to exist under the HSCA. *Lutz v. Chromatex, Inc.,* 730 F. Supp. 1328 (M.D. Pa. 1990). In subsequent decisions, both Judges Rambo and Conaboy have declined to follow the holding of *Lutz* and instead, have recognized the existence of a private cause of action. *Toole v. Gould, Inc.,* 764 F. Supp. 985 (M.D. Pa. 1991); *General Electric Environmental Services, Inc. v. Envirotech Corp.,* 763 F. Supp. 113 (M.D. Pa. 1991). While we need not repeat the detailed statutory interpretation undertaken in each of these cases, it is necessary to outline certain aspects of their analyses in order to explain the basis for our own determination that a private cause of action does, in fact, exist under the HSCA.

Section 702(a) and 1101 of the HSCA, 35 P.S. §§6020.702(a) and 6020.1101, are the provisions which the courts in *General Electric* and *Toole* found to establish a private cause of action. They read, pertinently, as follows:

"702(a) *General rule.*—A person who is responsible for a release or threatened release of a hazardous substance from a site as specified in section 701 is strictly liable for the following response costs and damages which result from the release or threatened release or to which the release or threatened release significantly contributes:

---

the HSCA. *Manella v. Thompson,* No. 89-01069-09-2 (C.P. Bucks, filed September 5, 1991); *Fry v. Lech Tool and Die Works, Inc.,* no. A.D. 1990-403 (C.P. Crawford, filed June 7, 1991).

"(1) Costs of interim response which are reasonable in light of the information available to the department at the time the interim response action was taken.

"(2) Reasonable and necessary or appropriate costs of remedial response incurred by the United States, the Commonwealth or a political subdivision.

"(3) *Other reasonable and necessary or appropriate costs of response incurred by any other person....* (emphasis added)

"1101. *Public nuisances*

"A release of a hazardous substance or a violation of any provision, regulation, order or response approved by the department under this act shall constitute a public nuisance. Any person allowing such a release or committing such a violation shall be liable for the response costs caused by the release or the violation. The board and any court of competent jurisdiction is hereby given jurisdiction over actions to recover the response costs."

In interpreting section 1101, Judge Rambo noted in *General Electric* that the provision "does not designate any particular party—the DER or subsequent innocent landowners, for instance—as being empowered to bring an action under its auspices or as the party to whom a violator is liable." *Id.* at 116.

The court found persuasive the argument that had the General Assembly intended to limit actions under this section to governmental entities, it would have inserted such language specifically, as it did in other sections of the HSCA. See *e.g.,* section 1103 (authorizing injunctive relief) and section 1104 (authorizing civil penalties by DER), 35 P.S. §§6020.1103 and 6020.1104.

In viewing section 702(a), the courts in *General Electric* and *Toole* both concluded that in order to give full effect to the terms of the statute, a private right

of action must be considered to have been created by section 702(a)(3).

"The court believes that section 702(a) through its very language was intended by the legislature to encompass polluter liability to private parties. Subsections 702(a) (1) through (a)(3) discuss an increasingly wide range of parties to whom a polluter may be liable. Section 702(a)(1) allows for recovery by the DER of response costs which are reasonable in light of its knowledge at the time of the response action. Section 702(a)(2) permits redress for costs incurred by the federal government, the Commonwealth, and the governments of the various political subdivisions within the Commonwealth. Then, section 702(a) (3) empowers *"any other person"* to recover reasonable and necessary cleanup costs." *General Electric, supra* at 116. (emphasis in original)

The court in *Toole* added that "[t]o accept the premise that no private right is created, section 702(a)(3) would appear to be only a redundant phrase by allowing the government to act as an intermediary to secure response costs for those private parties who seek to intervene in an action. On the other hand, if this provision is read to establish a remedy to be afforded private citizens, the words of the statute are given there [sic] fullest, legitimate, and broadest interpretation." *Id.* at 1000. The court further noted that no viable alternative interpretation of section 702(a)(3) had been presented by the defendant.

We are in agreement with the foregoing interpretation for several reasons. First, this interpretation satisfies the important objective of giving effect to all of the provisions of the HSCA. Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. §1921(a), provides, inter alia, "[e]very statute shall be construed,

if possible, to give effect to all its provisions." Another rule of statutory construction similarly provides as follows:

"In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used: ...

"(2) That the General Assembly intends the entire statute to be effective and certain." 1 Pa.C.S. §1922(2).

We are persuaded that in reading sections 702(a)(3) and 1101 of the HSCA together, fullest effect to those terms of the statute is provided by the conclusion that a private cause of action is thereby created.

We also observe that the goals of the General Assembly in enacting the HSCA are furthered by the existence of a private right of action for the recovery of response costs. In its declaration of policy under the HSCA, the legislature states the following:

"(5) Traditional legal remedies have not proved adequate for preventing the release of hazardous substances into the environment or for preventing the contamination of water supplies. It is necessary, therefore to clarify the responsibility of persons who own, possess, control or dispose of hazardous substances; and to assure the replacement of water supplies....

"(9) Extraordinary enforcement remedies and procedures are necessary and appropriate to encourage responsible persons to clean up hazardous sites and to deter persons in possession of hazardous substances from careless or haphazard management." Section 102(5) and (9) of the HSCA, 35 P.S. §6020.102(5) and (9).

We believe it is clear that the fundamental goals of the HSCA are well served by the existence of a private right of action to serve as another weapon in the arsenal

of remedies to protect the right of the citizens of the Commonwealth to a healthy environment. We are further influenced in this regard by the position of DER, as reflected in its amicus curiae *brief* filed with the court in the *General Electric* case. The court noted that DER "has stated categorically in its amicus brief and at oral argument that private party suits under the HSCA will greatly enhance the effectiveness of its efforts to clean up hazardous waste sites throughout the Commonwealth." *Id.* at 120. Once again, the rules of statutory construction provide guidance by establishing that administrative interpretations of a statute may be used in ascertaining the meaning of such legislation. 1 Pa.C.S. §1921(c)(8); see *Spicer v. Department of Public Welfare*, 58 Pa. Commw. 558, 428 A.2d 1028 (1981). Thus, we consider it appropriate to give due consideration to the position of the DER favoring the existence of a private right of action to recover response costs under the HSCA.

The final factor which we find supportive of our interpretation is the evident similarity in the structure of the HSCA and its federal counterpart, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§9601-9675. Of particular significance is the fact that the federal counterpart of section 702(a)(3) of the HSCA, "has been consistently interpreted in this circuit and others as authorizing private parties to sue violators of the act for cleanup costs." *General Electric* at 120. The federal provision, found in section 107(a)(4) of CERCLA, 42 U.S.C. §9607 (a)(4), provides that responsible persons shall be liable for:

"(A) All costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the natural contingency plan;

"(B) *any other necessary costs of response incurred by any other person consistent with the national contingency plan....*" (emphasis added)

Decisions which have found a private right of action when interpreting the cited language in CERCLA include *Chemical Waste Management Inc. v. Armstrong World Industries*, 669 F. Supp. 1285 (E.D. Pa. 1987) and *City of Philadelphia v. Stepan Chemical Co.*, 544 F. Supp. 1135 (E.D. Pa. 1982). We believe it may fairly be presumed that the General Assembly was aware of the state of the law regarding CERCLA when it patterned the HSCA, in large degree, on the federal legislation. See 1 Pa.C.S. §1922(4) (providing that "when a court of last resort has construed the language used in a statute the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language."). We conclude with Judge Conaboy's analysis of this issue:

"Either the legislature inadvertently adopted the private right concept by its reliance and adoption of the terms of the federal act, or the legislature was aware of the terms of the act was cognizant of the judicial interpretations finding a private right under these terms, and chose to enact those provisions. Since there is evidence that they relied on judicial interpretations in their decision-making process and we must presume that the legislature intended to given [sic] meaning to all of the provisions of what they enacted, we believe the latter is the only alternative." *Toole, supra* at 1001-1002. (footnote omitted)

Before concluding, we believe it is appropriate to briefly address the reasons we cannot agree with the holding in *Lutz v. Chromatex, Inc., supra* that a private right of action does not exist under the HSCA. First, the court relied strongly in its decision on a comparison of the

HSCA with the Solid Waste Management Act, Act of July 7, 1980, P.L. 380, *as amended* 35 P.S. §§6018.101-6018-1003. As pointed out by Judge Rambo in her decision in *General Electric,* the primary focus and goals of SWMA are regulatory in nature and, thus, aimed at government intervention, while the HSCA is a predominantly remedial statute. As such, a comparison of the appropriateness of private causes of action under these two pieces of legislation would appear to be less than conclusive since they are fundamentally different in purpose. We must agree that the more appropriate comparison is between CERCLA and HSCA.

A more convincing argument is posed by the fact that the legislative history of the HSCA indicated that a provision specifically granting a private right of action was deleted by the Senate, after it had gained approval in the House of Representatives. Judge Nealon concluded in *Lutz* that this fact is evidence of the General Assembly's intent to prevent a private cause of action for the recovery of response costs in the HSCA. We believe it is equally possible, however, that the General Assembly considered the existence of a private right of action to have already been adequately provided by section 702(a)(3). This interpretation is especially plausible given the state of judicial interpretations of the parallel CERCLA provision at the time the HSCA was enacted. Moreover, Judge Rambo points out that the "legislative history of CERCLA evidences that a similar deletion of a private party empowerment section did not deter courts from interpreting the statute as authorizing a private party action for cost recovery." *General Electric* at 117. We, accordingly conclude that the legislative history of the HSCA in no way precludes a finding that it was the General Assembly's intent to create a private right of action for recovery of response costs.

In conclusion, we find that sections 702(a)(3) and 1101 of the HSCA have the combined effect of creating

a private cause of action such as that being pursued in the subject action by plaintiff. We will, accordingly, order that defendants' demurrer be denied for the reasons stated in the foregoing opinion.

## ORDER

Now, September 23, 1992, the preliminary objection of the defendants in the nature of a demurrer is hereby denied.